**Hawa Abdi JAMA, n/k/a Hali Hashi Egal; Jeyakumar Anantharajah; Abu Bakar; Cecilia Kou Jeffrey; Abraham Kenneth; Shamimu Nanteza; Dennis Raji; Agatha Serwaa; and Sarah Tetteh Yower**

v.

**ESMOR CORRECTIONAL SERVICES, INC., n/k/a Correctional Services Corporation; James Slattery; Aaron Speisman; Willard Stovall; John Lima; Diane McClure; Estate of Richard Staley and Philip Johnson Esmor Correctional Services, Inc., and John Lima, Appellants.**

No. 08–2500.

United States Court of Appeals, Third Circuit.

Argued May 20, 2009.

Filed: Aug. 12, 2009.

James C. Owens, Esq, Virginia A. Seitz, Esq., Frank R. Volpe, Esq., Rebecca K. Wood, Esq. [Argued], Sidley Austin, Washington, DC, Larry S. Reich, Esq., Blank Rome LLP, New York, NY, for Appellants, Esmor Correctional Services, Inc., n/k/a Correctional Services Corporation; and John Lima.

Drew Dorman, Esq., Derek S. Tarson, Esq., Justin P. Smith, Esq. [Argued], Mary Beth Hogan, Esq., Alison J. Page, Esq., W. Barton Patterson, Esq., Erica Davila, Esq., Debevoise & Plimpton, New York, NY, Frank Askin, Esq., Rutgers University, Constitutional Law Clinic, Penny Venetis, Esq. [Argued], Rutgers University, Constitutional Litigation Clinic, Newark, NJ, for Plaintiffs–Appellees, Hawa Abdi Jama, n/k/a Hali Hashi Egal; Jeyakumar Anantharajah; Abu Bakar; Cecilia Kou Jeffrey; Abraham Kenneth;

Shamimu Nanteza; Dennis Raji; Agatha Serwaa; Sarah Tetteh Yower.

Before: RENDELL and GARTH, Circuit Judges, and VANASKIE,* District Judge.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Appellee Hawa Abdi Jama[1] was detained as an illegal immigrant at a detention center run by Esmor Correctional Services, Inc. ("Esmor"). Jama sued Esmor and certain of its officers and employees, including facility administrator John Lima, for violating her rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, and on tort theories. The jury found in favor of Jama on the RFRA claim, against Esmor and Lima, and in favor of Jama on one state negligence claim, against Esmor, Lima, and two other Defendants. The jury awarded $1 in RFRA damages and $100,000 in tort damages. The District Court awarded Jama an attorney's fee against Esmor and Lima after concluding that a portion of the tort award was "designed as compensation for" RFRA injuries. *Jama v. Esmor Corr. Servs. Inc.*, 549 F.Supp.2d 602, 607 (D.N.J.2008). Esmor and Lima appealed.

Appellants argue that the District Court's interpretation of the jury award was erroneous, and assert that no fee may be awarded because Jama's success on the fee-eligible RFRA claim was *de minimis*, and the pendent state claim cannot be considered. Appellants alternatively challenge the reasonableness of the amount awarded on several grounds. We agree that the District Court erred in interpreting the jury award, but do not agree that the Court is precluded from awarding fees under these circumstances as a matter of law. We will remand the matter for the District Court to reconsider the fee award under the legal standards discussed below.

## I. INTRODUCTION

Ms. Jama, a Somalian immigrant and Muslim, filed a complaint in 1997, along with 19 other plaintiffs, to redress allegedly abusive treatment and deplorable conditions at a private detention center in Elizabeth, New Jersey ("the Facility"). The Facility was operated by Esmor under contract with the U.S. Immigration and Naturalization Service. Esmor was named as a Defendant, as were certain officers and employees of the company, including the facility administrator John Lima.[2] By the time of the 2007 verdict, Jama was the last remaining plaintiff whose claims had not settled. At trial, she presented evidence of general indignities suffered in the Facility, as well as evidence specifically relating to restrictions on her practice of religion. This latter category included evidence that her attempts to pray were disrupted by guards, that she was picked up from the floor while praying and thrown onto her bed, that her Koran was thrown in the garbage, that she was subjected to unnecessary strip searches, that she was exposed naked in common view, that she was forced to eat pork, and that the only

---

* Honorable Thomas I. Vanaskie, Judge of the United States District Court for the Middle District of Pennsylvania, sitting by designation.

1. Appellee has since changed her name to Holi Hashi Egal. For consistency across the proceedings, we use her original name here.

2. The remaining Defendants subject to claims that reached the jury were James Slattery, Richard Staley (deceased), and Diane McClure. None of these individuals, nor the Estate of Richard Staley, is a party to this appeal.

cleric available was a priest who urged her to pray to Jesus.[3]

The District Court submitted four claims to the jury, including a claim that Defendants substantially burdened Jama's ability to practice her religion in violation of RFRA,[4] and a claim under state law that certain Defendants, including Esmor and Lima, were negligent in hiring, training, supervising, and/or retaining guards at the facility.[5] On the RFRA claim, the Court instructed the jury that Jama had to prove either that the officials "inflicted or constrained conduct or expressions that manifested some central tenet" of her beliefs, that their acts or omissions "meaningfully curtailed" her "ability to express adherence to her faith," or that the officials denied her a "reasonable opportunity to engage in those activities that are fundamental to her religion." (JA 194–95.) To succeed specifically against Defendant Esmor, the Court instructed that the violations had to be caused by "an official policy or custom" or "from the actions of an official with final policy-making authority." (JA 196.)

For negligent hiring/training/supervision/retention, the Court instructed that, under New Jersey law, Jama must prove that one or more of the enumerated Defendants, including Esmor and Lima, were negligent, and that their negligence proxi- mately caused Jama injury. Negligent acts or omissions within the purview of the claim included failures by the Defendants to exercise reasonable care in investigating the guards' conduct, and failures to exercise reasonable care in training and supervising the guards to prevent foreseeable harm to the inmates.

As for damages, if any, the jury was instructed to award "an amount that will fairly compensate her for any injury she actually sustained as a result of a defendant's conduct." (JA 207.) The Court explained that Jama claimed as damages "[p]hysical harm … during and after the events at issue, physical pain, disability, disfigurement, or discomfort, [and] emotional or mental harm … during and after the events at issue, including fear, humiliation, and mental anguish…." (JA 208–09.) The Court stated that the jury "must not award compensatory damages more than once for the same injury" and that it "must not award her any individual compensatory damages on each claim if the two claims resulted in the same injuries." (JA 209.) Further, "if different injuries are attributable to the separate claims, then you must compensat[e] Miss Jama for all of her injuries." (Id.) The Court also instructed that, "If you return a verdict for Miss Jama on the … RFRA claim[], but Miss Jama has failed to prove compensatory damages, then you must award nominal

---

**3.** As we do not have the complete trial record before us, we accept the District Court's characterization of the evidence for the limited purpose of providing background. *See Jama,* 549 F.Supp.2d at 607.

**4.** RFRA provides that a government "shall not substantially burden a person's exercise of religion" unless the government "demonstrates that application of the burden … is in furtherance of a compelling governmental interest; and … is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1. A person who is burdened in violation of RFRA has a private right of action. 42 U.S.C. § 2000bb–1(c). Although RFRA is unconstitutional as applied to state governments, *City of Boerne v. Flores,* 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), federal claims remain viable, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 439, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006).

**5.** The remaining two claims, not directly at issue here, alleged liability under the Alien Tort Claims Act, 28 U.S.C. § 1350, and negligent hiring of specified individuals under state law.

damages of one dollar. A person whose federal rights were violated is entitled to a recognition of that violation, even if she suffered no actual injury." (JA 210.)

The jury found that Jama proved her RFRA claim against both Esmor and John Lima, but awarded only $1 on the claim. It indicated on the questionnaire that no RFRA damages were included in damages awarded on any other claim. The jury also found that Jama proved negligent hiring, training, supervision, and/or retention against Esmor, Lima, and two other Defendants, and awarded $100,000 in compensatory damages on the claim.[6] The jury found for Defendants on the two other claims.

Jama moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988. In ascertaining the degree of Jama's success under § 1988, the District Court reasoned that the jury "was not in a position to clarify whether it had concluded that Jama had simply not proven any compensable [RFRA] injury ..., or whether the result reflected the jury's inability to distinguish between those and other injuries," and that the jury may have "bundle[d] all of Jama's injuries into one substantial award under Jama's Negligence Claims." *Jama*, 549 F.Supp.2d at 606. The Court stated that, based on its assessment of the evidence, "between 33% and 50% of the jury's Negligence Claims award of $100,000 was designed as compensation for Jama's RFRA-related injuries." *Id.* at 607. The Court calculated a lodestar of $642,398.57 based entirely on counsels' work on the RFRA claim, and awarded the entire amount against Esmor and Lima, the two

Defendants found liable under RFRA. *Id.* at 613. Esmor and Lima appealed.

## II. DISCUSSION

■ This Court has jurisdiction to review the award of a statutory attorney's fee under 28 U.S.C. § 1291, once the award is reduced to a definite amount. *Interfaith Comty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 701 (3d Cir.2005). We review the reasonableness of a fee award for abuse of discretion, but our review of the legal standard applied in calculating a fee is plenary. *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 358 (3d Cir.2001). Plenary review also extends to a district court's interpretation of a jury's answers to interrogatories. *See Failla v. Passaic*, 146 F.3d 149, 153 (3d Cir.1998). A district court abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir.2008) (internal quotations omitted).

42 U.S.C. § 1988(b) provides that, "In any action or proceeding to enforce [certain federal statutes including RFRA], the court, in its discretion, may allow the *prevailing party*, other than the United States, *a reasonable attorney's fee* as part of the costs...." 42 U.S.C. § 1988(b) (emphasis added). Appellants concede that, the jury having awarded nominal damages to Jama on her fee-eligible RFRA claim, Jama was the prevailing party for the purposes of § 1988. However, Appellants argue that the District Court erred in recharacterizing the jury verdict, and that

---

**6.** Because the jury awarded compensatory damages on what may be termed a negligent oversight claim, the jury essentially had to find that those guards who were negligently hired, trained, supervised and/or retained engaged in liability-creating conduct. In such

cases, a plaintiff must prove that the negligently hired, trained, supervised and/or retained employee's "incompetence, unfitness or dangerous characteristics proximately caused the injury." *Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508, 516 (1982).

no fee award can be reasonable as a matter of law because Jama's success on the fee-eligible federal claim was *de minimis* and the pendent state claim cannot be considered.

## A. Interpretation of the Jury Verdict

■ We agree with Appellants that the District Court erred in attributing a portion of Jama's tort award to her RFRA claim. The jury was instructed that "[n]ominal damages of one dollar are designed to acknowledge the deprivation of a federal right, even where no ... injury occurred. However, if you find actual injury, you must award compensatory damages as I instructed you, rather than nominal damages." (JA 210.) The jury plainly indicated on its questionnaire that $1 in damages was awarded on the RFRA claim, and that no RFRA damages were included in the award on any other claim. A court generally "must assume that the jury understood and followed the court's instructions." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 383 (3d Cir.2002). We find no inconsistencies in the jury's answers to interrogatories that might have required the District Court to exercise its limited authority to mold the answers to achieve consistency. *See McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 763–64 (3d Cir.1990). The District Court was thus required to presume that the jury determined that no actual injury was sustained as a result of the RFRA violation, and could not conclude that any portion of the $100,000 in compensatory damages was

awarded to compensate for a RFRA violation.[7]

We accordingly conclude that the District Court's assessment of the evidence was based on an improper interpretation of the interrogatories and verdict sheet, and we cannot affirm the resulting order awarding an attorney's fee.

## B. Impact of *Farrar v. Hobby*

Our conclusion that the District Court erred does not end our inquiry. Appellants argue that, under *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), no fee may be awarded as a matter of law because Jama was only awarded nominal damages on her fee-eligible RFRA claim. *Farrar* is plainly distinguishable because Jama received a substantial award on the litigation as a whole, whereas the plaintiffs in *Farrar* received only a nominal award of $1 in total. *Farrar*, 506 U.S. at 107, 113 S.Ct. 566. Yet even if we were to ignore the substantial award on Jama's pendent state claim, we do not agree with Appellants that *Farrar* would conclusively prohibit the award of a fee on Jama's RFRA claim.

In *Farrar*, state officials closed a school for troubled teens and secured an indictment against the owner. *Farrar*, 506 U.S. at 105, 113 S.Ct. 566. The owner sued, alleging deprivations of liberty and property without due process. *Id.* at 106, 113 S.Ct. 566. He, and his administrators after his death, sought only monetary relief in the form of $17 million in damages. *Id.* The jury found, through special interroga-

---

**7.** In light of the nature of the negligence claim on which Jama prevailed (negligent oversight), and the District Court's familiarity with the evidence, it is understandable that the Court could surmise that negligently hired, trained, supervised, and/or retained guards caused both compensable RFRA and tort injuries. Perhaps there was a shortcoming in the unchallenged special verdict sheet in that the jury was not required to specify the liability-creating conduct of the guards. However, the jury was instructed to determine damages according to the claims for relief, and the District Court did not have the prerogative of reallocating compensatory damages awarded solely on the negligent oversight claim.

tories, that just one of the six defendants had deprived Farrar of a civil right. However, the jury expressly found that the defendant's conduct did not proximately cause Farrar's asserted damages. *Id.* The district court ultimately awarded nominal damages of $1 and attorney's fees. *Id.* A divided panel of the Fifth Circuit reversed the award of fees, holding that the plaintiffs were not prevailing parties, and were thus ineligible for fees under § 1988. *Id.*

The Supreme Court affirmed in a 5–4 decision, but on different grounds. The Court held that a plaintiff who is awarded nominal damages is a prevailing party for the purposes of § 1988. *Id.* at 114, 113 S.Ct. 566. However, the Court also stated that, "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Id.* In determining the reasonableness of fees under § 1988, the Court continued, " 'the most critical factor ... is the degree of success obtained.' " *Id.* at 114, 113 S.Ct. 566 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Accordingly, when a plaintiff seeking compensatory damages "recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is *usually* no fee at all." *Id.* at 115, 113 S.Ct. 566 (emphasis added) (internal citation omitted).

Justice O'Connor joined the other four justices in the majority without reservation, but she filed a concurring opinion that further elaborated on the degree of success inquiry. While she acknowledged that the disparity between the damages sought and awarded was important in determining the degree of success, she stated that this "is not the only consideration." *Id.* at 121, 113 S.Ct. 566 (O'Connor, J., concurring). She asserted that "an award

of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved." *Id.* Justice O'Connor stated that "courts also must look to other factors" in assessing success, including "the significance of the legal issue" decided, and whether the decision "accomplished some public goal." *Id.* at 121–22, 113 S.Ct. 566. Upon considering all of these "relevant indicia of success," Justice O'Connor concluded that Farrar's victory was *de minimis. Id.* at 122, 113 S.Ct. 566.

Several courts of appeals, relying on Justice O'Connor's concurrence, have permitted fee awards despite the award of only nominal damages. In *Mercer v. Duke University,* 401 F.3d 199 (4th Cir.2005), a female college football player brought a Title IX discrimination claim against a university after she had been cut from the football team. *Id.* at 201. Although the plaintiff was awarded only nominal damages, the Court of Appeals for the Fourth Circuit upheld an award of $350,000 in attorney fees despite the *de minimis* compensatory relief. *Id.* at 211. The court concluded that a fee award was within the district court's discretion because the legal issue on which the plaintiff prevailed was significant and the litigation served a public purpose. *Id.* at 206–09.

In *Diaz–Rivera v. Rivera–Rodriguez,* 377 F.3d 119 (1st Cir.2004), terminated municipal employees sued city officials, alleging that their terminations were motivated by the employees' political affiliations. *Id.* at 121. The plaintiffs brought First Amendment and due process claims. *Id.* The jury found for the defendants on the First Amendment claims and awarded only nominal damages on the due process claim. *Id.* at 122. The district court awarded an attorney's fee, and the Court of Appeals for the First Circuit affirmed. The court of appeals distinguished the

facts of the case at bar from those in *Farrar* by applying Justice O'Connor's factors:

> Here, although plaintiffs' victory was *de minim is* as to the extent of relief, the district court appropriately exercised its discretion to award fees, as the determination that the municipality violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose.

*Id.* at 125, 113 S.Ct. 566. Other courts of appeals have also adopted Justice O'Connor's factors for resolving the degree of success inquiry. *See Cummings v. Connell,* 402 F.3d 936, 947 (9th Cir.2005); *Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir.1997); *Johnson v. Lafayette Fire Fighters Ass'n Local 472,* 51 F.3d 726, 731 (7th Cir.1995); *Jones v. Lockhart,* 29 F.3d 422, 423–24 (8th Cir.1994).

■ In contrast, we find no case in which a court of appeals has interpreted *Farrar* to require the automatic denial of fees that Appellants seek when only nominal damages are awarded. We agree with our sister courts of appeals that a district court determining the degree of a plaintiff's success should consider not only the difference between the relief sought and achieved, but also the significance of the

legal issue decided and whether the litigation served a public purpose.[8]

Yet our interpretation of *Farrar* only takes us part way in resolving this appeal. While Jama might be entitled to at least a partial fee award solely on the basis of her RFRA claim, Jama received more than mere nominal damages as a result of her litigation. The substantial award on her pendent state claim distinguishes her from the plaintiffs in *Farrar, Mercer,* and *Diaz–Rivera,* who received only nominal damages in total. We must therefore decide whether Jama's success on her state law claim may independently inform the degree of her success under § 1988.

### C. Pendent State Claim

We are surprised to find that the impact of success on state claims as related to the award of fees under § 1988 has not been squarely addressed by this Court, and has been sparsely litigated elsewhere. Appellants argue that pendent state law claims may only be considered in the success inquiry if the legal standards and operative facts for the state and federal fee-eligible claims are identical.[9] However, the cases relied on by Appellants do not really support this restrictive rule because they either permitted fee awards or were materi-

---

8. In adopting these considerations, we do not, as Judge Garth suggests, set aside the majority opinion in *Farrar,* nor do we accord Justice O'Connor's concurrence controlling weight. While the majority in *Farrar* stated that a reasonable fee is *usually* no fee when a plaintiff receives only nominal damages, the case involved extreme facts and the majority provided no guidance for distinguishing the usual from the unusual case. Justice O'Connor set forth a practical method for resolving such questions that other courts of appeals have found helpful. Also, we do not agree with Judge Garth that a nominal award on a RFRA claim necessarily amounts to a technical and *de minimis* victory. The jury found that Esmor and Lima violated Jama's rights by substantially burdening her exercise of religion.

The impact of such a violation on a victim may be uniquely difficult to express in monetary terms, but the significance of the right vindicated and the purpose served by the litigation cannot be overlooked and, especially in the prison setting, should not be diminished.

9. Appellants also assert another "exception" for allowing the consideration of state claims by pointing to cases where fee-eligible claims were not decided for prudential reasons, but fees were permitted on the basis of other successful claims. Since it is undisputed that Jama prevailed on her fee-eligible RFRA claim, these cases are all distinguishable and of little assistance.

ally distinguishable.[10] Appellants point to no case where a court denied fees to a plaintiff who had *prevailed* on a qualifying federal claim *and also* received a substantial award on a state law claim.

Jama contends that the express language of § 1988(b) authorizes the consideration of pendent state claims in awarding fees when a plaintiff prevails on a fee-eligible claim. The statute does not refer to "claims," but instead provides that fees may be awarded, "In any *action* or *proceeding* to enforce" various provisions including RFRA. 42 U.S.C. § 1988(b) (emphasis added). Under the plain text of the statute, Jama asserts, it is within a district court's discretion to consider the success of the action or proceeding as a whole, to include success on pendent state law claims.

We agree that the language of § 1988(b) seems to be sufficiently broad to endorse the inclusion of state claims in the consideration of overall success. However, we do not find precedent on point that clearly adopts this interpretation as conclusive. Jama relies on *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), in which plaintiffs obtained mixed results in a case involving multiple federal claims. There, the Supreme Court instructed the district court to consider whether the unsuccessful and successful claims shared a common core of facts or were based on related legal theories, in order to inform the "results obtained" inquiry. *Id.* at 434, 437, 103 S.Ct. 1933. While *Hensley* provides the standard for determining whether claims are related under § 1988, the case did not specifically involve pendent state claims, nor did the clarifying and reaffirming case of *Texas State Teachers Ass'n v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

The Court of Appeals for the Second Circuit decided a case closer to the one before us in *Bridges v. Eastman Kodak Co.,* 102 F.3d 56 (2d Cir.1996), *cert. denied sub nom., Yourdon, Inc. v. Bridges,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). The plaintiffs in *Bridges* alleged that they were sexually harassed by their employer in violation of Title VII and an analogous New York antidiscrimination statute. *Id.* at 57. The district court held a jury trial on the state claims and a

---

10. For instance, Appellants cite *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), but the language cited dealt with an Eleventh Amendment issue that is irrelevant here. *Id.* at 132, 100 S.Ct. 2570. Moreover, *Maher* cannot support a restrictive rule on fee awards because the Court interpreted § 1988 expansively, ruling that fee awards are permissible on non-constitutional claims under 42 U.S.C. § 1983. *Id.* at 128, 100 S.Ct. 2570. Appellants also cite to *Luria Brothers & Co. v. Allen,* 672 F.2d 347 (3d Cir.1982), a case in which attorney's fees were denied, but this case is plainly distinguishable because the plaintiff in *Luria,* unlike Jama, did not prevail on a fee-eligible federal claim. *Id.* at 358. Other cases asserted by Appellants are *Martini v. Federal National Mortgage Ass'n,* 178 F.3d 1336 (D.C.Cir.1999), and *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493 (9th Cir. 2000). *Martini* involved a determination as to whether a federal damages cap should apply where the state and local standards instructed to the jury were identical. 178 F.3d at 1349–50. This case is of little help because no fee award was at issue. In *Passantino,* a plaintiff prevailed on her federal Title VII retaliation claims, but did not prevail on her federal Title VII discrimination claims. *Passantino,* 212 F.3d at 517–18. In short shrift, the court of appeals rejected defendant's argument that the attorney fee should have been reduced for limited success, noting that the claims were "inextricably intertwined." *Id.* at 518. No state claim was involved, and nothing suggests that the court would have *required* the claims to be inextricably intertwined in order to conclude that the fee award was within the district court's discretion.

concurrent bench trial on the Title VII claims. *Id.* The jury found that the defendants violated the state law and awarded plaintiffs substantial amounts for back pay and compensatory damages. *Id.* The court made parallel findings under Title VII, but awarded no monetary relief on the federal claims, specifically in order to avoid double recovery. *Id.* at 58. The district court awarded fees to the plaintiffs without making any reduction for lack of success on the federal claim. *Id.*

The defendants argued on appeal that the plaintiffs were ineligible for attorney's fees because there was no award on the fee-eligible claim, and, alternatively, that the award should have been reduced due to the plaintiffs' limited success. *Id.* The Court of Appeals for the Second Circuit disagreed on both points in a brief opinion. The court concluded that the plaintiffs prevailed on the fee-eligible claim, and distinguished *Farrar* because *Farrar* did not involve "a plaintiff who had achieved substantial success—and a large monetary award—on pendent state-law claims." *Id.* at 59. The court affirmed the district court's judgment of award without any reduction. *Id.* at 60.

Although *Bridges* helps Jama, the case is distinguishable because the state and federal claims at bar were brought under parallel employment discrimination statutes. Here, the elements of Jama's state negligence and federal RFRA claims are not so closely aligned. Moreover, the court in *Bridges* specifically declined to award damages on the federal claim in order to avoid double recovery, suggesting that the plaintiffs would have recovered on the federal claim but for the jury award on

the state claim.[11] Yet nothing in *Bridges* can be read to *require* identical or nearly identical state and federal claims in order for the state claim to be considered as part of the degree of success inquiry.

The *Bridges* panel cited approvingly to an earlier case in the Second Circuit that aligns more closely with the instant circumstances. In *Milwe v. Cavuoto,* 653 F.2d 80 (2d Cir.1981), the plaintiff was injured in a scuffle with police officers. *Id.* at 81. Police officials thereafter secured a warrant for her arrest, and charged her with interfering with a police officer and disturbing the peace. *Id.* The charges were subsequently dismissed. *Id.* The plaintiff brought a suit against several officers and supervisors for compensatory and punitive damages under 42 U.S.C. § 1983, and on pendent state law theories. After a trial, the jury found for the plaintiff against one defendant on a constitutional excessive force claim and a pendent state assault claim. The jury awarded $1 and $1,320 on these claims, respectively. The jury also found for the plaintiff against one other defendant on a constitutional claim relating to her arrest, and a claim for false arrest under state law. The jury awarded $1 in total for both of these claims. *Id.*

The district court denied fees under § 1988, and the plaintiff appealed. Defendants argued that fees were inappropriate since, *inter alia,* the only significant damages were awarded on the pendent state assault claim. *Id.* at 84. The court of appeals reversed for two reasons. First, the court quoted *Maher v. Gagne,* and stated that "attorney's fees are available in

---

11. The jury here was instructed not to compensate more than once for the same injury. However, the interrogatory form asked for the amount of damages attributable to each claim, and asked whether RFRA damages were included in any award on another claim.

The jury indicated that only $1 was awarded on the RFRA claim, and that no RFRA damages were included in an award on any other claim. We thus cannot conclude that the jury awarded nominal damages on the RFRA claim merely to avoid double recovery.

cases 'in which the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim.' " [12] *Id.* (quoting *Maher,* 448 U.S. at 132, 100 S.Ct. 2570). The court thus extended Supreme Court jurisprudence regarding pendent federal claims to pendent state claims. The court also concluded that, leaving aside the state law claim, the award of $1 on a fee-eligible constitutional claim could alone support the award of fees. *Id.* at 84. The court accordingly remanded the matter for further consideration. *Id.*

The second reason given in *Milwe* for permitting fees, namely consideration of the fee-eligible claim only, should be read with caution in light of *Farrar* and our discussion above. However, *Farrar* did not involve a pendent state law claim, and thus has no effect on the first reason for permitting fees in *Milwe.* While we recognize that *Milwe* predates many important § 1988 cases, we find no case that contradicts or undermines the *Milwe* court's reasoning with regard to pendent state claims.[13] Based on these considerations, we cannot agree with Appellants that a district court may only consider an award on a pendent state claim if the operative facts or legal standards of the state and federal claims are identical.

While identity between the claims is not required, the state and federal claims must certainly bear some relation in order for the state claim to be considered under § 1988. Although *Hensley* did not address pendent state claims, the case does provide helpful guidance. In *Hensley,* the Supreme Court described how a district court should determine whether unsuccessful claims are sufficiently related to claims on which a plaintiff prevailed in order to include work on the unsuccessful claims in a fee award. The Court instructed that claims that "involve a common core of facts [or are] based on related legal theories" are related for these purposes. *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. The Court further instructed that "[t]here is no precise rule or formula for making these determinations," and that the district court "necessarily has discretion in making this equitable judgment." *Id.* at 436, 103 S.Ct. 1933. The Court also noted that "[a] request for attorney's fees should not result in a second major litigation." *Id.*

■ Applying this reasoning here, we conclude that the *Hensley* standard should guide a district court's consideration of pendent state claims in a litigation where a plaintiff has prevailed on a fee-eligible federal claim. We will vacate the award and remand the matter for the District Court to make this discretionary determination in the first instance. The District Court should determine whether Jama's RFRA and pendent state negligence claims involved a "common core of facts" or were

---

**12.** Appellants argue that allowing a district court to consider state common law claims would violate *Maher*'s "wholly statutory" language. We are not persuaded. In *Maher,* the Supreme Court was distinguishing between clearly fee-eligible constitutional civil rights claims and statutory Social Security claims under § 1983. The "wholly statutory" language marked an expansion of § 1988 to include non-constitutional claims. We agree with the District Court that the wholly statutory distinction has no bearing on this case.

**13.** We also note that the Court of Appeals for the First Circuit treated *Milwe* approvingly in *Aubin v. Fudala,* 782 F.2d 287, 291 (1st Cir. 1986) (citing *Milwe* and determining that an award on a pendent state negligence claim may inform the success inquiry where the plaintiff prevailed with a lesser award on a fee-eligible federal claim), overruled on other grounds by *Crowe v. Bolduc,* 365 F.3d 86 (1st Cir.2004).

based on "related legal theories." [14] If the claims are related under this standard, the results on Jama's tort claims may inform the degree of Jama's overall success for the purposes of § 1988. [15] Whether or not the state and federal claims are related, the District Court should also consider the extent to which Jama's RFRA claim might, even independently, justify a fee award under the factors articulated by Justice O'Connor in *Farrar*. Thus, while the jury's nominal award must undoubtedly color the degree of Jama's success on her RFRA claim, the District Court should also consider the significance of the legal issue on which she prevailed and determine whether her victory served a public purpose.

## D. Reasonableness of the Fee Awarded

Appellants argue in the alternative that, even if a fee award is permissible in this case, the $642,398.57 amount awarded by the District Court is unreasonably high. Since we conclude that the District Court's degree of success analysis was predicated on an erroneous interpretation of the jury verdict, we cannot review the overall figure until the Court has reconsidered Jama's success under the standards discussed above. However, we will address two issues relating to the overall award that are suitable for review at this time in order to provide guidance on remand.

 Appellants argue that the District Court abused its discretion by arriving at unreasonable hourly rates. A District Court's determination of market billing rates "is a factual question which is subject to a clearly erroneous standard of review." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225(3d Cir.1997). In moving for a fee award,

> The plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case. Once the plaintiff has carried this burden, defendant may contest that prima facie case only with appropriate record evidence.

*Id.* (internal citations omitted). "Under the clearly erroneous standard, a finding of fact may be reversed on appeal only if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Shire U.S. Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 352 (3d Cir.2003) (internal quotations omitted).

In determining the hourly rates in the instant matter, the District Court relied on

---

14. Although we do not have the complete trial record before us, statements by the District Court suggest that it should not be difficult to reconsider the relationship between the state and federal claims under the instant standard. For instance, the District Court stated in its opinion that "the RFRA-related conduct was … a significant part of Jama's Negligence Claims," suggesting that the Court identified legal and/or factual relationships between the two claims. *Jama*, 549 F.Supp.2d at 606.

15. Judge Garth contends that the jury's compensatory award on the negligence claim and mere nominal award on the RFRA claim conclusively forecloses the existence of a sufficient relationship between the state and fee-eligible claims, and our decision therefore intrudes upon the role of the jury. We do not agree. *Hensley* makes clear that an attorney's work on an unsuccessful claim may be compensated if the claim is factually or legally related to a claim on which the plaintiff prevailed. *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. The question of whether particular claims, successful or otherwise, arise from a common core of facts does not turn on a jury's verdict. Moreover, a jury's factual findings cannot possibly resolve relationships between legal theories. *Hensley* leaves no doubt that such inquiries under § 1988 are left to the discretion of district court. *Id.* at 436, 103 S.Ct. 1933.

a previous analysis it had made in connection with a request for discovery sanctions against Esmor. *Jama v. Esmor Corr. Servs., Inc.*, 2007 WL 4166016 (D.N.J. Nov.20, 2007). Jama's counsel supported its rates with affidavits listing similar rates that had been accepted by the District Court for the District of New Jersey in prior cases. The District Court accepted counsel's submitted rates, after making a reduction in fees from New York market levels to the levels of the metropolitan Newark market. *Id.* at *3. The attorney hourly rates accepted by the District Court for Debevoise & Plimpton LLP ranged from $600 for a partner to $205 for a first-year associate, and $400 for Ms. Penny Venetis of the Rutgers Constitutional Litigation Clinic.

■ Appellants argue that their own evidence regarding rates, and rates accepted in other cases, demonstrated that the rates used by the District Court are unreasonable. While the rates applied here may have been higher than rates applied in other cases, we find nothing in the record indicating that the District Court's determination was clearly erroneous. Jama's counsel submitted affidavits and prior examples of similar rates. The District Court weighed the sophisticated nature of the work involved, and made a reduction in Debevoise's rates to bring them in line with the Newark market. The rates adopted are neither devoid of a credible evidentiary basis, nor do they lack a rational relationship to the supporting data, and we will accordingly not disturb them on appeal.

Finally, Appellants argue that the District Court erred by including in the award $1,485.70 for expert fees because such fees are not authorized in RFRA claims. Jama concedes this point, and disclaims her entitlement to $1,485.70. Thus, the District Court shall exclude these expert fees from any future award.

## III. CONCLUSION

The District Court's degree of success inquiry under § 1988 was based on an impermissible reconstruction of the jury verdict, and we will VACATE the resulting order awarding an attorney's fee. We will REMAND the matter for the District Court to reconsider Jama's motion for an attorney's fee award consistent with this Opinion.

GARTH, Circuit Judge, dissenting:

Let me recount the fundamental issues presented on this appeal—in effect: "let's review the bidding."

1. The complaint filed by Jama sought $250,000 in statutory damages for violations of the Religious Freedom Restoration Act ("RFRA"); it also sought a total of nearly $5 million for all damages including general negligence damages, punitive damages, and RFRA.

2. RFRA provides that, if a violation is found, not only may damages be awarded but reasonable attorney's fees may be assessed. 42 U.S.C. § 1988(b).

3. After 23 days of trial before a jury which heard evidence of RFRA violations and tortious conduct by some of the defendants, the jury was charged specifically by the District Court as follows:

> You must not award compensatory damages more than once for the same injury. For example, if Miss Jama prevails on two claims and establishes a dollar amount for her injuries, you must not award her any individual compensatory damages on each claim if the two claims resulted in the same injuries. Miss Jama is only entitled to be made whole once, and may not recover more than she has lost. Of course, if different

injuries are attributable to the separate claims, then you must compensation [sic] Miss Jama for all of her injuries.... If you return a verdict for Miss Jama on the ATCA and the RFRA claims, but Miss Jama has failed to prove compensatory damages, then you must award nominal damages of one dollar.... However, if you find actual injury, you must award compensatory damages as I instructed you, rather than nominal damages.

J.A. 209–10.

4. No exceptions were taken to the charge. No additions were sought by the plaintiffs to the charge. *See Farrar v. Cain,* 756 F.2d 1148, 1150–51 (5th Cir. 1985), *aff'd* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (failure to object to the jury charge and special interrogatories precludes our review in the absence of plain error or manifest miscarriage of justice).

5. The evidence before the jury consisted of actions which violated RFRA, but also consisted of other negligent tortious actions by the defendants. We note them *infra.*

6. The jury was asked to answer a series of interrogatory questions in delivering its verdict.[16] The jury complied fully with the District Court's instructions and answered the relevant interrogatories as follows:

1. [not relevant to this appeal]

2. Has Ms. Jama proved by a preponderance of the evidence her Religious Freedom Restoration Act claim against Esmor . . . and/or Lima?

 Yes [17]

. . .

2F. What is the amount of compensatory damages to which Ms. Jama is entitled on account of her RFRA claim alone, without considering damages on account of any other claim on which you found a Defendant liable?

 $1.00

2G. Was the amount of the damages awarded on the RFRA claim included in the amount of damages awarded on any other claim, and, if so, which claims?

. . .

 Negligence Claim # 1: No [18]

. . .

2H. Is Ms. Jama entitled to punitive damages against any Defendant found liable on her RFRA claim?

 No

. . .

3F. What is the amount of the compensatory damages to which Ms. Jama is entitled on account of her negligence # 1 claim?

 $100,000

J.A. 240–43.

7. No exceptions or objections were taken to the form or to the content of the interrogatories, nor were additions sought to the interrogatories.

8. When the jury returned with its verdict, the Clerk of the Court had the following exchange with the jury foreperson:

---

16. The only other case cited by Jama in which interrogatories were utilized by the District Court was *Farrar* itself. However, the interrogatories in *Farrar* were not detailed as they were here, did not involve the distinction between eligible and ineligible fee statutes, and did not afford the explicit and unequivocal answers to the interrogatories that the instant verdict provides.

17. The jury found that the RFRA claim was *not* proved against Defendants Slattery, Staley, and McClure.

18. "Yes" was the first answer given by the jury. That answer was crossed out and "No" was entered in its place.

THE CLERK: Okay. What is the amount of compensatory damages to which Miss Jama is entitled on account of her RFRA claim *alone,* without considering damages on account of any other claim on which you found a defendant liable?

THE FOREPERSON: One dollar.

THE CLERK: Was the amount—I'm sorry. Was the amount of damages awarded on the RFRA claim included in the amount of damages awarded on any other claim?

THE FOREPERSON: No.

THE CLERK: Okay. Is Miss Jama entitled to punitive damages against any defendant found liable on her RFRA claim?

THE FOREPERSON: No.

J.A. 232 (emphasis added).

9. The District Court awarded attorney's fees holding that 33% to 50% of the damages awarded were allocable to the RFRA claim.

10. My colleagues in the majority correctly hold that the District Court erred in its determination, and I agree with them. Where I part company with my colleagues is their stark refusal to recognize the jury's explicit declaration, made after receiving the District Court's specific instructions, that the $1 awarded for the RFRA claim was not included in the calculation of the $100,000 awarded on the general state negligence claim. In other words, the fee-eligible RFRA conduct punished by the $1 award was wholly apart from, and distinct from, the non-fee-eligible conduct punished by the award of $100,000 for negligent conduct.

Thus, in this case, only the nominal damages may be considered for purposes of fee-eligible attorney's fees, and the only reasonable attorney's fee is no fee at all.

*Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

I would not remand to the District Court. Rather, I would reverse outright and instruct the District Court to deny all attorney's fees as I believe no further consideration is required.

## I.

The majority offers two theories under which it believes the District Court could award fees. First, under *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the District Court could determine that the state claim of negligent hiring, training, supervision, and retention involved a "common core of facts" or was based on a "related legal theory" such that the $100,000 award on that claim could enhance the overall "degree of success" of the $1 award obtained on the RFRA claim. But the jury's verdict, expressed unequivocally and unambiguously in the interrogatory answers and in the answers to the Court Clerk, forecloses this argument by drawing an unmistakable line between the two claims. Alternatively, the District Court might apply Justice O'Connor's concurrence in *Farrar* and find that factors other than the amount of damages make the RFRA award, standing alone, more worthy than a "technical" or "de minimis" victory. Again, however, this argument is completely undercut by the fact that the jury explicitly set apart the conduct ascribable to the RFRA claim, and determined that this conduct merited no damages other than the bare acknowledgment that a violation occurred.

## A.

An examination of the verdict form rules out the possibility that the plaintiff's success on the negligence claim had any bearing on the nominal award on the RFRA claim. Interrogatory number 2G asked

specifically whether "the amount of the damages awarded on the RFRA claim [was] included in the amount of damages awarded on any other claim." J.A. 241. In response, the jury initially marked "Yes," scratched out that response, and then marked its final answer as "No." *Id.* This amended response clearly demonstrates that the jury not only considered, but ultimately rejected, the notion that the RFRA award and the negligence award shared any common basis. All of the proscribed conduct is distinct from the general negligence conduct. So too are the defendants who have been found liable. Only two defendants have been found liable for the RFRA conduct, whereas four defendants have been found liable for the general negligence conduct, thereby emphasizing the lack of legal and factual overlap between the RFRA and negligence claims.

The underlying facts bear out this dichotomy. Indeed, the majority itself notes that Jama presented "evidence of general indignities suffered in the Facility," on the one hand, and "evidence specifically relating to restrictions on her practice of religion," on the other hand. Maj. op. 171. The majority then enumerates the conduct that fell within the latter category, including exposing Jama naked to common view, forcing her to eat pork, disrupting her prayers, and defiling her copy of the Koran.

The majority does not, however, explain that the "general indignities" were of an entirely different nature. Toilets were in close proximity to sleeping areas and were clogged and overflowing with human waste. Food supplies were insufficient and often consisted of spoiled or rotten food. The tainted food caused vomiting and diarrhea, which exacerbated the already overwhelmed plumbing. Heating was inadequate in the winter causing ice to collect on the cell walls, while prisoners were deprived of warm clothing and sufficient blankets. Female prisoners, like Jama, were given only one sanitary napkin per month. The guards themselves were physically and psychologically abusive to the prisoners regardless of religion.

The only possible understanding of the jury's answer to interrogatory number 2G is that the jury segregated these general indignities from the religious indignities, and then concluded that one set (the general conduct) merited $100,000 in compensatory damages while the other set (the RFRA conduct) merited none. The jury explicitly disavowed any overlap in the damages it awarded; accordingly, neither we nor the District Court may alter that verdict by conferring the success obtained on the negligence claim to the RFRA claim. By altering the jury's verdict, the District Court erred in assuming that the jury ignored its instructions and acted improperly. It is an "almost invariable assumption of the law that jurors follow their instructions." *Shannon v. United States,* 512 U.S. 573, 585, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994) (quoting *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Neither the District Court nor my colleagues in the majority have the authority to alter the jury's findings or to construe the jury's findings in a way that is inconsistent with the verdict.

The Seventh Amendment provides that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.; *see also Davis v. Omitowoju,* 883 F.2d 1155 (3d Cir.1989). My colleagues in the majority would permit the District Court to substitute its judgment for the jury's verdict by circumventing the jury's actual RFRA award and adding to it a portion of

the negligence award so that fee-shifting may be achieved. The majority opinion, by supplanting the jury's verdict and fact-finding with the District Court's factfinding, has thereby violated the proper roles of judge and jury under the Constitution.

I believe the verdict form is definitively dispositive in this case.

### B.

All we are left with, then, is the $1 award standing alone, irrespective of the $100,000 award. Viewed thus, this case reveals itself to be an unexceptional civil rights case where the plaintiff has prevailed but failed to prove any damages. In *Farrar*, the Supreme Court announced the default rule that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." 506 U.S. at 115, 113 S.Ct. 566 (citation omitted).

Subsequently, several courts of appeals have affirmed that a nominal victory should receive a fee award only in the rare or unusual case. *See Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir.1996) ("[W]hile there is no *per se* rule that a plaintiff recovering nominal damages can never get a fee award, *Farrar* indicates that the award of fees in such a case will be rare."); *Doe v. Chao*, 511 F.3d 461, 467 (4th Cir.2007) (interpreting *Farrar* as permitting fee awards only "in some rare cases"); *Pouillon v. Little*, 326 F.3d 713, 717 (6th Cir. 2003) (concluding that the plaintiff had failed to distinguish his case "from the 'usual' case where a prevailing civil rights plaintiff is not entitled to attorney's fees when all that he has won is ... nominal damages"); *Maul v. Constan*, 23 F.3d 143, 146 (7th Cir.1994) (stating that "attorney's fees are not appropriate simply because plaintiff successfully establishes that his constitutional rights have been violated");

*Wilcox v. City of Reno*, 42 F.3d 550 (9th Cir.1994) ("*Farrar* teaches that an award of nominal damages is not enough" to support an award of fees without some other tangible result.); *Gray ex rel. Alexander v. Bostic*, 570 F.3d 1321, 1326–27 (11th Cir. 2009) ("Plaintiffs in nominal-damage cases should not be awarded attorney's fees in any but exceptional circumstances.").

The majority sets aside the controlling opinion in *Farrar*, however, and turns instead to Justice O'Connor's concurrence for the proposition that fee awards are occasionally permitted despite an award of only nominal damages. But Justice O'Connor's concurring opinion—not joined by any other member of the Court—is just that: it is her own explanation of how she herself would like to hold. *Farrar*, 506 U.S. at 116, 113 S.Ct. 566 (O'Connor, J., concurring) ("I join the Court's opinion and concur in its judgment. I write separately only to explain more fully why, in my view, it is appropriate to deny fees in this case."). Five justices including Justice O'Connor joined the majority opinion in holding that a $1 nominal fee does *not* usually entitle the plaintiff to § 1988(b) attorney's fees. There was no plurality for Justice O'Connor's concurring opinion to join or to bolster, and therefore we do not look to it for the "narrowest grounds" of a splintered decision. *See Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("When a *fragmented* court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (emphasis added) (citation and quotation marks omitted); *see also Planned Parenthood of Se. Pa. v. Casey*, 947 F.2d 682, 693 (3d Cir.1991) ("In a run-of-the-mill case where a majority of the Justices endorse a

single legal standard, lower courts simply follow that standard." (citation omitted)).

Moreover, to the extent that Justice O'Connor's concurrence is attractive, it only elaborates that, in some cases, a fee award might be justified by the presence of other factors, such as a significant legal issue or the accomplishment of some public goal, which elevate the nominal damages beyond a mere "technical" or "de minimis" victory. *Id.* at 121–22, 113 S.Ct. 566 (O'Connor, J., concurring). And, in some unusual cases, courts have indeed cited these factors in affirming fee awards for nominal damages. *See, e.g., Mercer v. Duke Univ.,* 401 F.3d 199 (4th Cir.2005) (noting that the case involved a question of first impression that had broader implications for all women participating on traditionally male school sports teams); *Diaz–Rivera v. Rivera–Rodriguez,* 377 F.3d 119 (1st Cir.2004) (concluding that the plaintiffs' victory in a political discrimination suit against their municipality was a significant legal conclusion serving an important public purpose).

Nevertheless, an award of attorney's fees remains inappropriate in the ordinary civil rights case where the only damages obtained were nominal. *See Pino,* 101 F.3d at 239 ("The vast majority of civil rights litigation does not result in groundbreaking conclusions of law ... ."); *Maul,* 23 F.3d at 146 (observing that all "Section 1983 claims necessarily involve the violation of a right, privilege or immunity").

Indeed, none of the indicated factors are present in this case. Nothing in the record suggests that Jama's victory on her RFRA claim was anything but a technical and de minimis victory. Even the District Court was unable to justify awarding fees for Jama's RFRA claim without borrowing substantially from the general negligence claim. Without the ability to conflate these two claims, however, the District Court would only be left to conclude that no fee award is appropriate.

## II.

Because I would hold that the District Court is entirely precluded by the jury's special interrogatories and verdict form from augmenting the nominal damages on the RFRA claim with the $100,000 damages on the general negligence claim, I would hold that the District Court's judgment must be reversed and that the District Court must be instructed that no attorney's fees are to be allowed. Therefore, I respectfully dissent from the majority's opinion, which remands to the District Court for further consideration.