**Ivan VELIUS**

**v.**

**TOWNSHIP OF HAMILTON; Police Officer Francis Smyth, Badge No. 36; Police Officer Jackobe, Badge No. 83; Police Officer Kevin Zippilli, Badge No. 63**

**Ivan Velius; Francis Smyth; Kevin Zippilli, Appellants.**

**Nos. 11–1041, 11–1257.**

United States Court of Appeals, Third Circuit.

Argued Dec. 8, 2011.

Filed: March 9, 2012.

Thomas Bruno, II [Argued], Abramson & Denenberg, Philadelphia, PA, for Appellant.

A. Michael Barker [Argued], Barker, Scott & Gelfand, Linwood, NJ, for Appellees.

Before: HARDIMAN and BARRY, Circuit Judges and SLOMSKY *, District Judge.

OPINION OF THE COURT

HARDIMAN, Circuit Judge.

This civil rights case presents two consolidated appeals. Plaintiff Ivan Velius proved at trial that Hamilton Township Police Officers Francis Smyth and Kevin Zippilli (collectively, the Officers) violated his Fourth Amendment right to be free from unreasonable seizures. Velius's victory was a Pyrrhic one, however, as he

* The Honorable Joel H. Slomsky, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

received nominal damages of $1 and his attorneys were awarded only $2,259.00. Velius appealed the District Court's order awarding attorneys' fees. The Officers and Hamilton Township filed a cross-appeal, claiming that no fee was warranted. The Officers also claim that the District Court gave an errant supplemental jury instruction and should have entered judgment in their favor based on qualified immunity. Although we discern no error in the District Court's judgment in favor of Velius, we will vacate the attorneys' fees award and remand for *de novo* reconsideration of that issue.

## I

Because we write for the parties, who are well acquainted with the case, we recount only the essential facts and procedural history.

On January 7, 2007, Velius was involved in a traffic accident while driving under the influence of alcohol. Velius fled the scene but was stopped later by the Officers after another policeman observed him driving erratically through a high school parking lot. As they did at trial, the parties dispute what happened next. According to Velius, the Officers dragged him from his truck, causing a "welt" on his chest. Velius also claims the Officers handcuffed him too tightly and refused to loosen the handcuffs after he complained, causing him permanent wrist injuries. According to the Officers, Velius exited his truck and approached Officer Zippilli near the truck bed. As Zippilli attempted to pry Velius's hands from the truck bed, both men accidentally fell to the ground.

Velius sued the Officers under 42 U.S.C. § 1983, alleging that they used excessive force in violation of the Fourth Amendment. Velius also alleged bystander liability against both of the Officers and another policeman not involved in this appeal. After an eight-day trial, the District Court charged the jury that Velius had to prove two things: (1) that "[the Officers] intentionally committed certain acts;" and (2) that "[t]hose acts violated [Velius's] Fourth Amendment right not to be subjected to excessive force." Like the jury charge, the verdict sheet did not delineate which conduct—extracting Velius from his truck and taking him to the ground, handcuffing him too tightly, or both—constituted the excessive force. The verdict sheet asked, first, whether either of the Officers "intentionally commit[ted] an act, under color of state law, that violated [Velius's] Fourth Amendment right not to be subjected to excessive force." It then asked whether "any of the [Officers'] acts, described in Question (1) ... cause[d] injury to [Velius]." The Officers did not object to the verdict sheet or the jury charge on this basis. The jury found the Officers liable for both excessive force and bystander liability. Nevertheless, the jury found that the Officers had not caused any injury to Velius. The verdict sheet stated: "If you [find no injury], Ivan Velius is awarded nominal damages in the amount of $1.00." Judgment was entered accordingly.

On November 11, 2010, the Officers moved to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e), arguing that non-injurious handcuffing is not a constitutional violation and, in the alternative, that they were entitled to qualified immunity. The District Court denied the motion, and the Officers timely filed their notice of appeal on January 4, 2011. Thereafter, Velius requested $82,600 in attorneys' fees under 42 U.S.C. § 1988. On January 10, 2011, the District Court granted Velius's motion but awarded him only $2,259. Velius timely appealed.

## II[1]

### A

■ The Officers first claim the District Court erred in responding to the jury's request to clarify the meaning of "intentionally" in the verdict sheet. Question (1) asked whether either of the Officers "intentionally commit[ted] an act, under color of state law, that violated [Velius's] Fourth Amendment right not to be subjected to excessive force." The Court responded:

In this case, the use of force involves two distinct acts. One was taking the defendant [sic] to the ground. There's different versions. Although you have to decide how that happened. But taking him to the ground is one act of force. And the second act of force was putting on handcuffs and keeping him there for some, again disputed testimony, but some period of time. The word intentionally used in that context means those acts have to have been deliberate. If somebody trips and falls because two people's feet get tangled, they're not intended to take somebody to the ground. In other words, there would have to be an intention to take the person to the ground. It would have to be an intention to put the handcuffs on him. Okay. However, whether—it's not the use of force that's wrong, it's the use of excessive force that's wrongful and unconstitutional.

. . .

Whether the defendants intended to violate the Plaintiff's civil rights is irrelevant to the inquiry. So intentionally refers here to the acts of using, the acts of using force. It doesn't refer to motivation or an intent to violate civil rights as such.

The Officers claim the District Court resolved a material factual dispute against them by advising the jury that force was used when the Officers took Velius to the ground.[2] We disagree. Read in conjunction with the entire instruction, it is clear that the District Court did not improperly resolve a factual dispute regarding the Officers' intent, but merely responded to the question of the jury to clarify the meaning of the word "intentionally." Accordingly, it did not abuse its discretion in instructing the jury. *See, e.g., Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 361 (3d Cir.1999).

### B

The Officers also appeal the District Court's denial of their motion to amend the judgment based on qualified immunity. We exercise plenary review over such decisions when, as in this case, they involve matters of law. *Atkinson v. Taylor,* 316 F.3d 257, 261 (3d Cir.2003); *Cureton v. NCAA,* 252 F.3d 267, 272 (3d Cir.2001).

■ The Officers claim the jury's finding of a constitutional violation without an injury was "new evidence" justifying amendment of the judgment. *See N. River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995). They contend that, absent injury, neither extracting Velius from his truck nor handcuffing him too tightly constitutes excessive force as a matter of law. The Officers further claim

---

1. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), and we have jurisdiction over the District Court's final judgments pursuant to 28 U.S.C. § 1291.

2. Velius claims that the Officers have waived this argument by failing to raise it in their post-trial motion to alter the judgment. We

disagree because the Officers objected when the District Court indicated that it would give this response to the jury's question. So long as a party objected at trial, Rule 59(e) does not require it to reassert its objections in post-trial motions in order to preserve them for appeal. *See* Fed.R.Civ.P. 59(e).

that even if their conduct amounted to excessive force, they were entitled to qualified immunity because an arrestee's specific rights to be free from non-injurious forcible extraction from his vehicle and non-injurious tight handcuffing were not clearly established when they acted.

The Officers' arguments contravene Supreme Court and Third Circuit precedent that had clearly established at the time of Velius's arrest that excessive force need not cause injury to be actionable under the Fourth Amendment. *See, e.g., Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) ("[N]ominal damages … are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."); *Allah v. Al–Hafeez,* 226 F.3d 247, 252 (3d Cir.2000) ("[T]he Supreme Court [has issued a] clear directive that nominal damages are available for the vindication of a constitutional right absent any proof of actual injury."). The District Court properly denied the Officers qualified immunity on this basis. *Velius v. Twp. of Hamilton,* 754 F.Supp.2d 689, 695 (D.N.J.2010) ("[I]n 2007, the law with respect to claims of excessive force by handcuffing[ ] was clear: officers may violate a person's Fourth Amendment right to be free from excessive force even in the absence of physical injury.").

The Officers argue that we should inquire with greater specificity whether it was clearly established that forcible extraction from a vehicle without causing injury or tightly handcuffing an arrestee without causing injury could also be Fourth Amendment violations. But we cannot unpack the jury's verdict as the Officers request. The jury instructions and verdict sheet asked whether the Officers committed some intentional act that constituted excessive force. The verdict sheet offers no clue as to which aspect(s)

of the Officers' conduct during the arrest and handcuffing constituted the Fourth Amendment violation. *See, e.g., Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir. 2007) ("To the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question."); *Ellis v. La Vecchia,* 567 F.Supp.2d 601, 609 (S.D.N.Y.2008) ("Without special interrogatories, it is unclear what behavior [the jury] attributed to [Plaintiff] to find that there was probable cause to arrest him for obstruction of government administration. Absent such factual findings, the Court cannot determine as a matter of law that [Defendant's] conduct in issuing summonses to [Plaintiff] was objectively reasonable. By failing to request interrogatories regarding [Plaintiff's] behavior, Defendant deprived himself of the opportunity to meet his burden of proof on this issue [of qualified immunity] in the post-trial context."); *see also, e.g., Gonzales v. Duran,* 590 F.3d 855, 860 (10th Cir.2009) (explaining that the best approach in the rare cases in which qualified immunity depends on specific factual findings by the jury is to use special interrogatories). Thus, the broad rule that non-injurious force can rise to the level of a Fourth Amendment violation forecloses any claim to qualified immunity in this case.

Moreover, if the Officers believed they could not be liable if the jury found no injury to Velius, they could have made that argument prior to the verdict. Rule 59(e) "permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n. 5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation and internal quotation marks

omitted). Here, the Officers could have objected to the jury instructions and the verdict sheet. Likewise, in their motion for judgment as a matter of law based on the sufficiency of the evidence, the Officers could have argued that scant evidence of injury from tight handcuffing could not legally support excessive-force liability. Since the Officers were content to submit a broad excessive-force question to the jury, they cannot now demand that their excessive-force conduct be more specifically defined for purposes of qualified immunity. *See, e.g., Zellner,* 494 F.3d at 368.

## C

Both parties dispute the attorneys' fees award in this case. Velius argues that it was too low, while the Officers claim no fee was warranted.

We exercise plenary review over the District Court's application of the legal standards governing attorneys' fees. *See, e.g., McKenna v. City of Phila.,* 582 F.3d 447, 455 (3d Cir.2009). The ultimate "amount of a fee award, however, is within the district court's discretion so long as it 'employs correct standards and procedures and makes findings of fact not clearly erroneous,'" so we review the total award for abuse of discretion. *Pub. Interest Research Grp. of N.J. v. Windall,* 51 F.3d 1179, 1184 (3d Cir.1995) (quoting *Ne. Women's Ctr. v. McMonagle,* 889 F.2d 466, 475 (3d Cir.1989)).[3]

### 1

Whether attorneys' fees should be awarded to civil rights plaintiffs who receive only nominal damages is a source of confusion. Accordingly, we review the controlling precedents in some detail.

In *Farrar v. Hobby,* a five-Justice majority of the Supreme Court held that civil rights plaintiffs who receive only nominal damages are prevailing parties under 42 U.S.C. § 1988. 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The Court noted that the "'technical' nature" of a nominal damages award nevertheless "bear[s] on the propriety of fees awarded under § 1988." *Id.* at 114, 113 S.Ct. 566. Given the general principle that courts must "give primary consideration to the amount of damages awarded as compared to the amount sought" in awarding fees, *id.,* in nominal damages cases, the calculation of fees under the traditional lodestar standard "*may* be an excessive amount," *id.* (emphasis added) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Although *Farrar* preserved the trial judge's right to award fees equal to the lodestar, the Court also opined that "[w]hen a plaintiff recovers only nominal damages ... the only reasonable fee is *usually no fee at all.*" *Id.* at 115, 113 S.Ct. 566 (emphasis added). At the same time, it emphasized the broad discretion of district courts to award attorneys' fees in nominal damages cases. *See id.* at 114–15, 113 S.Ct. 566. Thus, the Court concluded that district courts "may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness or multiplying 'the number of hours reasonably expended ... by a reasonable hourly rate.'" *Id.* at 115, 113 S.Ct. 566 (alteration in original) (internal citation omitted) (quoting *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933).

---

**3.** Velius claims we lack jurisdiction over the Officers' argument that no fee should have been awarded because their notice of appeal from the denial of their motion to amend the judgment on January 4, 2011, did not encompass the attorneys' fees order. We disagree because the propriety of the fee award is before us by virtue of Velius's own appeal of that same order. Our plenary review of the District Court's application of the relevant legal standards puts at issue its entire analysis regarding attorneys' fees.

Although she joined the majority in *Farrar*, Justice O'Connor authored a separate concurrence "only to explain more fully why, in [her] view, it [was] appropriate to deny fees in [that] case." *Id.* at 116, 113 S.Ct. 566 (O'Connor, J., concurring). Justice O'Connor agreed with the majority that "[w]hen the plaintiff's success is purely technical or *de minimis*, no fees can be awarded," *id.* at 117, 113 S.Ct. 566, but she sought to clarify what factors might demonstrate the type of rare case in which nominal damages might not be "*de minimis*," such that attorneys' fees would be proper. In her view, "a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical." *Id.* at 121, 113 S.Ct. 566. In addition, "the significance of the legal issue" on which the plaintiff prevailed should inform the fee award. *Id.* Finally, "success might be considered material if it also accomplished some public goal." *Id.* at 121–22, 113 S.Ct. 566.

We recently had occasion to interpret *Farrar* in *Jama v. Esmor Correctional Services, Inc.*, 577 F.3d 169 (3d Cir.2009). In that case we held, over a vigorous dissent from Judge Garth, that a plaintiff who was awarded only nominal damages on her successful Religious Freedom Restoration Act (RFRA) claim might nonetheless be entitled to attorneys' fees. *Id.* at 171, 173. We acknowledged the *Farrar* mandate that "*usually* no fee at all" is proper in nominal damages cases. *Id.* at 175. But we found Justice O'Connor's additional considerations—namely, "the difference between the relief sought and achieved, ... the significance of the legal issue decided and whether the litigation served a public purpose"—helpful in determining whether a fee was appropriate. *Id.* at 176. "In adopting these considerations, we [did] not ... set aside the majority opinion in *Farrar* ... [or] accord Justice O'Connor's

concurrence controlling weight." *Id.* at 176 n. 8. Although we held that the District Court could not attribute any of plaintiff's damages for pendent state law claims to her RFRA claim, *id.* at 174, we noted that Jama's "substantial award on her pendent state claim distinguishe[d] her from the plaintiff[ ] in *Farrar*, ... who received only nominal damages *in total*," *id.* at 176. Ultimately, we remanded so the district court could determine whether and how to incorporate the plaintiff's state-claim success into the attorneys' fees analysis. *Id.* at 179–80.

### 2

In Velius's case, the District Court acknowledged that *Farrar* permits a court to award low fees or no fees in nominal damages cases. Citing *Jama*, the District Court seemed to believe it was obligated to apply the factors cited in Justice O'Connor's concurrence in *Farrar*. *See Velius*, 754 F.Supp.2d at 698–700. Based on those factors, it concluded that "the judgment in this case does teach a valuable lesson [because it] ... involved handcuffing of an arrestee—an action law enforcement officers repeat on [a] daily basis throughout the country." *Id.* at 699. It reasoned that

> [w]hen the jury found that Defendants Zippilli and Smyth used excessive force in handcuffing Plaintiff, it provided a concrete and specific example of a significant legal principle: "officers may violate a person's Fourth Amendment right to be free from excessive force even in the absence of physical injury." For this reason, the judgment has exemplary value which may guide other officers' conduct in the future, thereby serving an important public purpose.

*Id.* at 699–700. "[W]eighing all three factors together, the Court conclude[d] that [Velius's] victory was not merely *de minimis* and therefore an award of low fees,

as opposed to no fees, [was] reasonable." *Id.* at 700.

Having found an award of low fees appropriate, the District Court noted that *Farrar* allowed it to determine the fee amount "without reciting the 12 factors bearing on reasonableness or multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* Nevertheless, despite the broad discretion afforded it under *Farrar,* the District Court engaged in a lengthy, lodestar-type analysis. Velius submitted a log showing that his counsel, Thomas Bruno II, worked 206.5 total hours on Velius's case and attributing those hours to various tasks. The District Court distinguished hours spent working on the liability phase of the trial from those spent on the damages presentation or on a "hybrid" category of work. To calculate Bruno's hours worked, it established a formula by which it would award fees for 75% of Bruno's time spent on liability issues, 50% of time spent on hybrid issues, and 0% of time spent on damages issues. After determining that 33.4 hours had been spent on damages, 16.45 hours had been spent on liability, and 156.05 hours had been spent on hybrid issues, the Court concluded that it would award fees for 90.36 hours of work. The Court's opinion states that it performed this exercise in order to reach "the reasonable number of hours spent." *Id.* at 701. With respect to his hourly rate, attorney Bruno submitted an affidavit detailing his qualifications and his experience in civil litigation and averring that attorneys often take civil rights cases on a contingency basis and that attorneys of his caliber typically earn $400 per hour in the Philadelphia legal market. This rate was supported by another Philadelphia attorney and a Community Legal Services schedule. Recognizing again that "*Farrar* is clear that [a] Court need not engage in the lengthy analysis of determining a reason-

able hourly rate," the District Court "exercise[d] its discretion to conclude that $25 per hour [was] reasonable compensation for time reasonably spent on th[e] case." *Id.* It then multiplied the "time reasonably spent on [the] case, 90.36 hours, by 25, to arrive at a reasonable compensation figure of $2259.00." *Id.*

### 3

Velius argues that once the District Court concluded that the nominal damages award was not "*de minimis,*" *i.e.,* that it was a rare case, the Court was required to calculate the lodestar. We disagree because this argument cannot be reconciled with the very broad discretion *Farrar* granted to district courts. Nevertheless, for reasons we shall explain, we will vacate the award and remand for a full redetermination on Velius's motion for attorneys' fees.

█ In our view, the District Court misapplied the legal standards applicable to attorneys' fees motions in nominal damages cases. This error was understandable, however, insofar as our opinion in *Jama* may have muddied the waters after *Farrar.* Our "adopt[ion]" of Justice O'Connor's factors must be understood only as an endorsement of the use of those considerations by trial judges who believe the case before them may present the rare situation in which success on the claim justifies attorneys' fees despite the technical victory manifested by an award of nominal damages. Our opinion in *Jama,* like Justice O'Connor's concurrence in *Farrar,* did not and could not circumscribe the broad discretion *Farrar* conferred upon district judges.

We read *Farrar* to grant district courts substantial discretion to decide whether no fee or some fee would be reasonable, as long as they acknowledge that a nominal

damages award is presumptively a technical victory that does not merit an award of attorneys' fees. Whenever the trial court determines that no fee or a low fee is proper, *Farrar* eliminates the need to apply multi-factor tests or calculate the lodestar. Indeed, *Farrar* permits a district court to determine the amount of any low fee award it deems is warranted by whatever means it chooses in its broad discretion. *See Farrar*, 506 U.S. at 115, 113 S.Ct. 566. Although we have cited favorably the factors noted by Justice O'Connor, *Farrar* does not establish any rule strictly governing when a nominal damages award signals *de minimis* success or dictating how fees must be calculated if a court determines that a low fee is appropriate. The only requirement that remains intact for awarding attorneys' fees in nominal damages cases is that if the court decides to award something other than no fee or a low fee, it must conduct a lodestar analysis.

The District Court's opinion leaves us unsure whether it recognized the presumption of no fees established in *Farrar* and whether it deemed itself obliged to apply Justice O'Connor's factors. Moreover, its lodestar calculation is in tension (if not inconsistent) with its repeated recognition that such a calculation was not necessary under *Farrar* once it concluded that a low

fee was appropriate. This does not mean the District Court was precluded from calculating a fee or that the amount it awarded was an abuse of discretion. Rather, we will vacate the attorneys' fees award and remand because, under our plenary review, the District Court appears to have misunderstood and misapplied the *Farrar* standards.[4] On remand, the District Court, armed with the broad discretion afforded by *Farrar*, as clarified herein, should conduct a *de novo* review of Velius's motion for attorneys' fees.[5]

## III

For the foregoing reasons, we will affirm the District Court's entry of judgment against the Officers and its denial of their motion to amend the judgment. However, we will vacate the attorneys' fees award in favor of Velius and remand for proceedings consistent with this opinion.

---

**4.** On remand, the District Court should consider the fact that an "obtuse" verdict "cannot deter misconduct any more than a bolt of lightning can; ... it teaches no valuable lesson because it carries no discernable meaning." *Farrar*, 506 U.S. at 122, 113 S.Ct. 566 (O'Connor, J., concurring). The verdict sheet in this case does not demonstrate whether the jury's verdict was based on the Officers pulling Velius from his truck, handcuffing him too tightly, or both. Thus, it cannot serve any substantial notice-giving function vis-à-vis the impropriety of tight handcuffing. We further caution that, given the *Farrar* rule that nominal damages awards in civil rights cases usually will warrant no fee and that every civil

rights case in which the plaintiff prevails on the merits vindicates some right, it cannot be the case that the mere vindication of rights alone suffices to distinguish those cases in which the presumption of no fee is overcome.

**5.** Because we will vacate the award and remand for a new hearing, we do not consider Velius's claims that the District Court erred in finding that Bruno's reasonable hourly compensation was $25 per hour, in failing to hold a hearing after finding a dispute regarding the hourly rate, and in *sua sponte* reducing the hours worked.