**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3393
_____

DAMEON DALEY,
                              Appellant

v.

HARLEY LAPPIN, Director of the BOP;
WARDEN B.A. BLEDSOE;
K. REAR, Associate Warden;
D. YOUNG, Associate Warden;
UNITED STATES OF AMERICA;
FEDERAL BUREAU OF PRISONS
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-10-cv-02060)
District Judge:  Hon. Sylvia H. Rambo
_____

Argued
January 7, 2014
_____

Before:  SMITH, SHWARTZ, and SCIRICA, Circuit Judges.

(Filed: January 29, 2014)

Kevin C. Meacham, Esq. [ARGUED]
Thomas S. Jones, Esq.
Jones Day
500 Grant Street
Suite 4500
Pittsburgh, PA 15219

Counsel for Appellant

Lowell V. Sturgill, Jr., Esq. [ARGUED]
Michael J. Singer, Esq.
United States Department of Justice
Civil Division
Room 7241
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

J. Justin Blewitt, Jr., Esq.
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

Counsel for Appellees

_____

OPINION

_____

SHWARTZ, Circuit Judge.

Dameon Daley, a former federal inmate, is a member of the Rastafarian religion who sought to practice his faith by restricting himself to a vegan-type diet while in prison. He contends that defendants Harley Lappin, the Director of the Bureau of Prisons ("BOP"), Warden B. A. Bledsoe and Associate Wardens K. Rear and D. Young at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg") (collectively "Defendants"), as well as the United States and the BOP deprived him of the right to do so in violation of the United States Constitution and federal law. The District Court found that: (1) his claims against the United States and the BOP were barred by sovereign

immunity,[1] (2) he did not exhaust his administrative remedies concerning his Eighth Amendment claim as required under the Prison Litigation Reform Act ("PLRA"),[2] (3) denying him the requested diet did not burden his ability to exercise his religion because the requested diet was not mandated by Rastafarianism, and (4) Daley was not similarly situated to his comparators. As a result, the District Court granted summary judgment in favor of Defendants. We will affirm in part, vacate in part, and remand.

I

Daley states that he follows the Rastafarian faith's "Ital" diet, which is characterized by food that is: (1) "plant source based"; (2) "free of all forms of animal proteins and animal by-products"; and (3) "prepared with, [and] served on or in utensils and vessels" that have never come into contact with pork. App. 60. He states that such a diet is akin to a "Kosher vegan" diet. App. 61. Daley states that he was provided the Certified Religious Diet ("CRD"),[3] which met his dietary requirements until October 2009, when the meat component of CRD meals ceased to be separately packaged and could not be discarded without contaminating the meal with "animal proteins," rendering all but two of the meals on the CRD menu unacceptable to him. Daley thereafter

---

[1] Daley does not appeal this ruling.

[2] Daley does not appeal this ruling.

[3] BOP Program Statement P5360.09 ¶ 18 (available at http://www.bop.gov/policy/progstat/5360_009.pdf) embodies the BOP's dietary policy for religious adherents and describes it as having "two distinct components" within an "Alternative Diet Program": inmate self-selection from the "main line" and provision of "nationally recognized, religiously certified processed foods."

requested meals that conformed to his religious practices, but his requests were denied.[4]

He filed internal grievances concerning the denials and a complaint in the United States

District Court for the Middle District of Pennsylvania, contending that the decision

denying him access to the requested diet violated the First Amendment, the Equal

Protection Clause, and the Eighth Amendment, as well as the Religious Freedom

Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., and the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq.,[5] and entitled him

to damages as well as declaratory and injunctive relief.[6]

On September 7, 2011, the District Court, treating Defendants' motion to dismiss

as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), granted summary

judgment in favor of all Defendants. Relevant to this appeal, the District Court held that:

(1) Daley could not succeed under RFRA or the First Amendment, in part because of the

"freedom of choice in a Rastafarian diet," App. 24-27; and (2) Daley could not succeed

under the Equal Protection Clause because he could not show that he was "similarly

---

[4] For example, a BOP Administrator wrote to Daley that "[t]he national menu cannot be modified at the local level and substitutions . . . cannot be made." App. 109. Further, Defendant Rear wrote to Daley that "[t]here are no other menus/diets recognized by the Bureau of Prisons" besides the two described in footnote 3. App. 179. To counter this, Daley provided a declaration from another inmate purporting to show that dietary modifications were provided to certain inmates.

[5] Daley does not appeal the ruling that, as a federal prisoner, he was not eligible for relief under RLUIPA.

[6] Daley conceded at oral argument that his requests for injunctive and declaratory relief are moot as a result of his release from custody.

4

situated" to another inmate who allegedly received a vegan diet that was required by his religion. App. 28-30.[7] Daley appeals these rulings.

## II

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. This Court's "review of the grant or denial of summary judgment is plenary . . . ." Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We apply the same standard the District Court applied, viewing facts and making reasonable inferences therefrom in the non-moving party's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005).

## III

### A

Each of Daley's claims arises from an assertion that Defendants' actions interfered with his ability to exercise his religion. To determine entitlement to relief under the First Amendment and the Equal Protection Clause for an action alleged to interfere with a religious practice, a court must first "decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things." Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981); see also DeHart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000) (en banc) (stating Equal Protection and First Amendment analyses of inmates' religion-related dietary restrictions are the same and begin with a

---

[7] Daley filed a motion for reconsideration, which the District Court denied.

determination that there is a sincerely held religious belief); <u>Ford v. Bureau of Prisons</u>, No. 3:CV-12-0873, 2013 WL 5603587, at *5 (M.D. Pa. Oct. 11, 2013) (applying same requirements to RFRA claims and constitutional claims (citing <u>Africa</u>, 662 F.2d at 1029-30)).

The parties do not dispute the religiosity of Rastafarianism or that Daley's beliefs were sincerely held. Moreover, the law is clear that a religious practice is protected even if it is not deemed to be mandatory or practiced by every member of the religion. <u>See Thomas v. Review Bd. of Ind. Emp't Sec. Div.</u>, 450 U.S. 707, 715-16 (1981) ("[T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect."); <u>DeHart</u>, 227 F.3d at 56 ("It would be inconsistent with a long line of Supreme Court precedent to accord less respect to a sincerely held religious belief solely because it is not held by others.").

Here, the District Court concluded that, because Rastafarianism is individualistic "and the expression of 'Ital' living varies widely, with few universal 'rules,'" there is "freedom of choice" and Daley's diet is not a mandatory tenet of his religion. App. 27; <u>see also</u> App. 29 (stating that Rastafarianism has a "variety in dietary limitations"). The District Court determined that this nonmandatory practice could be restricted without violating his rights. Because there is no dispute that Daley sincerely held the belief that compliance with a particular diet was called for by his religion, the District Court's holding that the Ital diet was not mandatory and thus not protected was a legal error.

6

B

Because Daley has alleged that the application of a prison regulation interfered with the free exercise of his religion, the District Court should have considered the factors set forth in Turner v. Safley, 482 U.S. 78 (1987), to determine if Defendants' application of the regulation in denying his dietary requests was reasonably related to a legitimate penological interest. DeHart, 227 F.3d at 51. As we repeated in DeHart, Turner set forth the following factors to consider in assessing the ultimate reasonableness of the prison regulation:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

Id. (internal quotation marks and alteration omitted).[8] As we observed in DeHart, "Turner does not call for placing each factor in one of two columns and tallying a numerical result." Id. at 59.

The District Court neither cited Turner nor performed the analysis it requires. Rather, it simply resolved Daley's First Amendment claim by concluding that Rastafarianism does not impose mandatory dietary requirements and that regulations

---

[8] The burden of persuasion in challenging the reasonableness of a prison regulation ultimately rests on the inmate, but the prison has the "slight" burden of demonstrating the first Turner factor. Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012).

limiting access to Daley's requested diet could not interfere with his exercise of his religion. As just discussed, the nonmandatory nature of the activity alone does not render it unprotected. Moreover, the record does not provide facts upon which we can evaluate several of the Turner factors, such as whether Daley had other ways to practice his religion[9] or the degree to which accommodating his requested diet would have impacted prison resources. Because we cannot conduct the Turner analysis, we will vacate in part the District Court's order granting summary judgment in favor of Defendants on Daley's First Amendment claim and remand to allow for further development of the record and for the District Court to consider the Turner factors to determine whether applying the regulation to deny the diet he requested was permissible under the First Amendment. See Wolf v. Ashcroft, 297 F.3d 305, 310 (3d Cir. 2002); DeHart, 227 F.3d at 59-61 & n.8.

C

We next examine the District Court's order concerning the RFRA claim. Congress enacted RFRA to "restore the compelling interest test" applied to First Amendment Free Exercise claims. Sossamon v. Texas, 131 S. Ct. 1651, 1656 (2011) (internal quotation marks omitted). RFRA allows the government to "substantially burden a person's exercise of religion only if" the government "demonstrates that application of the burden to the person" furthers a "compelling governmental interest"

---

[9] The second Turner factor requires consideration of whether "other avenues of religious practice [were] open" to Daley, not merely consideration of the specific practice at issue. DeHart, 227 F.3d at 54. Thus, consideration of this factor on remand may require inquiry into the ways Daley's religion is practiced and the extent to which he was able to practice his religion through avenues other than his diet. See id.

8

and "is the least restrictive means of furthering that" interest. 42 U.S.C. § 2000bb-1(b). In Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007), we explained that "a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."[10]

Here, the District Court held that Defendants had not substantially burdened Daley's exercise of religion because the diet he sought was not a mandatory component of his religion and the record did not indicate that he had no opportunities "to observe religious holidays, [or] participate in holiday meals, fastings, and prayers." App. 27. While it is true the record is silent as to whether Daley was deprived of other avenues to exercise his religion, such as observing holidays or praying, the District Court inappropriately concluded that the nonmandatory nature of the dietary component of Daley's religion rendered it unprotected. Because it is protected, and because Daley has alleged that he was denied access to a diet that met the requirements of his religion, there is at least a suggestion that he faced "substantial pressure . . . to substantially modify his behavior and to violate his beliefs." See Washington, 497 F.3d at 280-83. Accordingly, we will vacate in part the District Court's order granting summary judgment in favor of Defendants on Daley's RFRA claim and remand to allow the parties to develop a record

---

[10] Although Washington defined "substantial burden" under RLUIPA, its definition is equally applicable to RFRA. See Sossamon, 131 S. Ct. at 1656 (describing similarities in language and legislative histories).

on which the District Court can determine whether Daley's ability to exercise his religion was substantially burdened, whether a "compelling governmental interest" existed to allow the exercise to be burdened, and whether the government has used the "least restrictive means" to advance its interest.

D

Defendants assert for the first time on appeal that Daley failed to exhaust his claim that he was treated differently from other inmates and that dismissal of his Equal Protection claim was therefore warranted. The PLRA provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense that the defendant must plead and prove. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Although Defendants now assert that Daley failed to exhaust his complaint of disparate treatment, they did not make this argument before the District Court. The only claim that they asserted Daley failed to exhaust was the Eighth Amendment claim arising from his assertion that he was forced to eat foods to which he was allergic and forced to subsist on apples and bread, resulting in malnourishment. Because Defendants did not contend that Daley failed to exhaust his administrative remedies concerning his request for a diet based upon his religious requirements or his claim that he was treated differently from other inmates, Defendants did not assert the affirmative defense of exhaustion as to those claims and therefore waived that defense.

Having determined that Defendants waived the exhaustion defense to Daley's Equal Protection claim, we next consider the District Court's decision to grant summary judgment in Defendants' favor. In rejecting Daley's Equal Protection claim, the District Court held that he was not "similarly situated" to an inmate whose vegan diet was "commensurate with the dietary laws of [his] religion." App. 29. It reached this conclusion despite being presented with a declaration from an inmate, a member of the NuWabian religion, who claimed that he and two Rastafarian inmates were provided vegan meals in accordance with the dictates of their religions. App. 224-25. Although the declarant received approval for his all-natural, non-animal-based diet from the medical director, it is not clear whether this approval was given because of a medical condition or to accommodate his religious practice. Moreover, the declarant's description of the diets provided to other inmates at a minimum suggests on this undeveloped record that there may be a dispute concerning a material fact about the Defendants' ability to provide religious-based vegan diets.

Further, the District Court may have improperly drawn an inference in favor of the movant from these facts. As to the diets of the two Rastafarian inmates, the District Court stated that "there is nothing demonstrating that [they] were served vegan meals only because of their religious beliefs and not for any other reason such as a medical restriction." App. 29. This observation seems to draw an inference against Daley, the non-movant, which is improper in the context of a summary judgment motion. See Hugh, 418 F.3d at 267. Once the record is more developed, the District Court may clarify whether it drew an inference against Daley from these facts.

11

Having determined that the District Court erred when it dismissed Daley's First Amendment and RFRA claims based upon a view that the dietary component of Rastafarianism was not mandatory, that it did not consider the Turner factors, and that it improperly dismissed at this stage the Equal Protection claim, we now turn to whether Daley has provided sufficient facts from which to determine that it is plausible Defendants played a role in the alleged deprivation of his rights.

E

Defendants argue that they are entitled to summary judgment because they were not personally involved in the alleged violations of Daley's rights.[11] To recover from a defendant in a civil rights case, a plaintiff must show the defendant had "personal involvement in the alleged wrongs . . . ." Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (internal quotation marks omitted). We will therefore examine the record to determine whether Daley provided facts from which personal involvement may be discerned.

With respect to Lappin, other than having sent complaints to him, Daley presented no evidence from which to conclude he played any role in Daley's alleged deprivation. Indeed, the record does not even show Lappin knew of or responded to Daley's

_____

[11] Defendants do not dispute that damages are available for claims brought against government officials in their individual capacity under both Bivens and RFRA. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971); 42 U.S.C. § 2000bb-1(c) (permitting "[a] person whose religious exercise has been burdened" to "obtain appropriate relief against a government"); 42 U.S.C. § 2000bb-2(1) (defining the term "government" to include an "official (or other person acting under color of law) of the United States"); see also Jama v. Esmor Corr. Servs., Inc., 577 F.3d 169, 173 (3d Cir. 2009) (reviewing award of nominal RFRA damages to plaintiff against corporate and individual defendants).

complaints. This is not surprising, as complaints of the sort Daley had lodged would be referred to the BOP's General Counsel, 28 C.F.R. § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal."), and the record shows that someone other than Lappin responded to Daley's complaints. See, e.g., App. 76 (Regional Director), 80 (Warden), 109 (Administrator, National Inmate Appeals).

Moreover, Daley's allegation that Lappin instituted and/or implemented the policy pursuant to which the Defendants have allegedly violated Daley's constitutional rights is insufficient to make Lappin liable when unaccompanied by evidence or plausible allegations that he actually caused or knew of and acquiesced in Daley's alleged injuries. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (to establish Bivens liability, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74-76 (3d Cir. 2011) (plaintiffs did not plead sufficient facts establishing two high-ranking federal officials based in Washington, D.C. who were charged with nationwide supervision of the enforcement of federal immigration law had "legally sufficient notice of the underlying unconstitutional conduct of their subordinates"). Accordingly, we will affirm the District Court's order granting summary judgment in favor of Lappin.

As to Rear, Bledsoe, and Young, however, Daley has made more specific allegations concerning their alleged role in the denial of Daley's dietary requests. Specifically, Daley: (1) asserted that Rear denied Daley's request for a substitute diet in September 2010, telling him, "Allah is forgiving, he will understand," and, "You are just

13

gonna have to wait months," App. 63-65; (2) presented documents suggesting Bledsoe denied or concurred in denials of Daley's requests for a different diet; (3) asserted in a declaration that Rear, Bledsoe, and Young all denied Daley's requests for a different diet; and (4) submitted declarations of one inmate stating that Rear told Daley "that she did not care about his religious beliefs or its dietary requirements," App. 195, and another inmate stating that Rear and Young were aware that Daley "was having difficulties exhausting his administrative remedies concerning food issues." App. 200.

Rear, Bledsoe and Young argue that they lacked the authority to grant or deny Daley's request or change the BOP's menu. Other than pointing to responses to Daley's requests from other BOP officials, see App. 109 (decision of Harrell Watts, Administrator, National Inmate Appeals, stating that "[t]he national menu cannot be modified at the local level"), the record is insufficiently developed to determine if Rear, Bledsoe and Young's actions impacted the decisions at the prison. Indeed, the record suggests that certain dietary decisions are made at the prison level. App. 224-25 (inmate declaration stating that he received a modified diet on religious grounds). Where no discovery has occurred and the record is not sufficiently developed, we conclude that a more developed record is needed to determine if Daley's assertions are sufficient for these defendants to avoid liability. For these reasons, we will vacate the order granting summary judgment on Daley's First Amendment, Equal Protection, and RFRA claims in favor of Rear, Bledsoe, and Young and remand for development of the record concerning the roles they each played and authority each had in denying Daley's dietary request.

14

F

Finally, Defendants argue that they are entitled to qualified immunity with respect to Daley's Bivens claims. Because the District Court did not address qualified immunity and because the record lacks specificity as to the conduct in which each defendant actually engaged and the authority each had to address Daley's diet and requests, we lack a sufficient record to decide this issue. See, e.g., Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir. 2003) (remanding qualified immunity issue where the district court had not reached it and "the record [was] unclear as to the relationship between each defendant's specific conduct and the rights at issue"). Thus, we decline to reach the qualified immunity issue and remand it to the District Court.

V

For the foregoing reasons, we will affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.