[Cite as *Roberts v. Mike's Trucking, Ltd.*, 2014-Ohio-766.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| TERESA L. ROBERTS, | : | |
| Appellant/Cross-Appellee, | : | CASE NOS. CA2013-04-011 |
| | | CA2013-04-014 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 3/3/2014 |
| MIKE'S TRUCKING, LTD., et al., | : | |
| Appellees/Cross-Appellants. | : | |


CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVH20110123


Marshall and Morrow, LLC, John S. Marshall, Edward R. Forman, 111 West Rich Street, Suite 430, Columbus, Ohio 43215, for appellant/cross-appellee

Luper Neidenthal & Logan, Gregory H. Melick, Matthew T. Anderson, 50 West Broad Street, Suite 1200, Columbus, Ohio 43215, for appellees/cross-appellants


**HENDRICKSON, P.J.**

{¶ 1} Appellant/cross-appellee, Teresa L. Roberts, appeals from a decision of the Madison County Court of Common Pleas denying her motion for attorney fees. Appellee/cross-appellant, Mike's Trucking and Mike Culbertson, appeal from the jury's verdict finding that Mike's Trucking and Culbertson liable for sexual harassment towards Roberts.

{¶ 2} On April 22, 2011, Roberts filed a complaint against Mike's Trucking and Culbertson alleging a number of claims. Roberts is a former employee of Mike's Trucking.

Culbertson is the sole owner of Mike's Trucking and was Roberts' supervisor during her employment. One of Roberts' allegations was that Culbertson and Mike's Trucking created a hostile workplace environment through sexual harassment. Roberts alleged that Culbertson was individually liable under Ohio law while Mike's Trucking was liable under both Ohio and federal law.

{¶ 3} A jury trial began on February 25, 2013. The trial was bifurcated and the first phase focused on the sexual harassment hostile workplace claim.[1] Upon conclusion of the first portion of the trial, the jury found in favor of Roberts and against both Culbertson and Mike's Trucking. Specifically, the jury found that Culbertson, individually, violated Ohio law and awarded Roberts $42,000. The jury also returned a verdict in favor of Roberts against Mike's Trucking under both Ohio and federal law. The jury awarded Roberts $100 against Mike's Trucking.

{¶ 4} The court then proceeded with the second phase of the trial and instructed the jury regarding the award of punitive damages and attorney fees. The jury found that Culbertson should pay punitive damages to Roberts but set the amount of those damages at zero dollars. Additionally, the jury indicated that Culbertson should pay Roberts' attorney fees. In regards to Mike's Trucking under the Ohio claim, the jury again found for Roberts on the issue of punitive damages but granted an award of zero dollars. The jury also found that Roberts' attorney fees should be paid by Mike's Trucking. Under the federal claim against Mike's Trucking, the jury found that the business should be responsible for punitive damages and awarded zero dollars. The jury was not asked to determine whether Culbertson should be awarded attorney fees under the federal claim as this was a question for the court.

{¶ 5} Subsequently, Roberts filed a motion for attorney fees while Culbertson and

---

1. The trial also concerned Culbertson's and Mike's Trucking conversion counterclaim. The jury found against Culbertson and Mike's Trucking on this issue and this claim is not discussed by the parties on appeal.

Mike's Trucking filed a motion for judgment notwithstanding the verdict regarding the award of attorney fees. On April 5, 2013, the trial court denied Roberts' request for attorney fees, overruling her motion under both Ohio and federal law.

{¶ 6} Roberts now appeals, raising the following assignments of error:

{¶ 7} Assignment of Error No. 1:

{¶ 8} AN AWARD OF ATTORNEYS' FEES IS NOT CONTINGENT ON AN ACTUAL AWARD OF AT LEAST A PENNY IN PUNITIVE DAMAGES; INSTEAD, A JURY'S FINDING OF PROOF BY CLEAR AND CONVINCING EVIDENCE OF MALICE AND ENTITLEMENT TO PUNITIVE DAMAGES JUSTIFIES A JURY'S AWARD OF FEES.

{¶ 9} Assignment of Error No. 2:

{¶ 10} AS INSTRUCTED THE JURY AVOIDED ANY OVERLAPPING DAMAGES AND, USING PARALLEL FACTS AND LEGAL STANDARDS, AWARDED FAR GREATER THAN NOMINAL DAMAGES, ENTITLING MS. ROBERTS TO A FEES AWARD UNDER FEDERAL LAW.

{¶ 11} Assignment of Error No. 3:

{¶ 12} A REASONABLE FEDERAL FEES AWARD NEED NOT BE PROPORTIONATE TO THE DAMAGES AWARDED UNDER FEDERAL LAW FOR THE SAME DISCRIMINATION.

{¶ 13} Assignment of Error No. 4:

{¶ 14} UNDER THE OHIO CONSTITUTION, THE TRIAL JUDGE WAS REQUIRED TO IMPLEMENT, RATHER THAN DISCARD, THE JURY'S FINDING THAT MS. ROBERTS WAS ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

{¶ 15} Assignment of Error No. 5:

{¶ 16} BY NEITHER OBJECTING TO INSTRUCTIONS OR VERDICT FORMS, NOR

INVOKING CIV.R. 49(B), THE EMPLOYER AND SUPERVISOR WAIVED THE GROUNDS OF AN INCONSISTENCY IN THE JURY'S VERDICTS ON ZERO DAMAGES AND ATTORNEY'S FEES.

{¶ 17} Assignment of Error No. 6:

{¶ 18} THE TRIAL JUDGE WAS NOT AUTHORIZED BY CIV.R. 49(B) TO DISCARD THE JURY'S SEEMINGLY INCONSISTENT VERDICT OF AN AWARD OF ZERO PUNITIVE DAMAGES AND AN AWARD OF ATTORNEY'S FEES.

{¶ 19} Culbertson and Mike's Trucking cross-appeal from the same judgment, assignment the following as error:

{¶ 20} Cross-Assignment of Error No. 1:

{¶ 21} THE JURY'S AWARD OF COMPENSATORY AND NOMINAL DAMAGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 22} For ease of discussion, we will discuss the assignments of error in three parts: 1.) the challenges to attorney fees under the Ohio claim; 2.) the challenges to attorney fees under the federal claim; and 3.) whether the verdict under both claims was against the manifest weight of the evidence.

## I. Ohio Claim

{¶ 23} Roberts challenges the trial court's decision in overruling her motion for attorney fees under the Ohio cause of action. She argues that the court erred in its interpretation of the law regarding the award of attorney fees in the context of punitive damages. Roberts also contends that the court's action in not awarding attorney fees violated her constitutional right to a jury trial and Civ.R. 49(B).

{¶ 24} Roberts' arguments all concern questions of law and we will review Roberts' contentions under a de novo standard of review. *State ex rel. Doran v. Preble Cty. Bd. of*

*Commrs.*, 12th Dist. Preble No. CA2012-11-015, 2013-Ohio-3579, ¶ 15. In a de novo review, this court independently reviews the record without giving deference to the trial court's decision. *State v. Kormos*, 12th Dist. Clermont No. CA2011-08-059, 2012-Ohio-3128, ¶ 13.

## A. Attorney Fees and Punitive Damages Law

{¶ 25} Roberts' first argument concerns the trial court's interpretation of the law regarding attorney fees and punitive damages. In overruling Roberts' motion for attorney fees, the trial court reasoned that in order to receive attorney fees, the jury must (1) determine punitive damages are proper and (2) award an actual amount of punitive damages. In this case, the jury granted punitive damages but awarded zero dollars. On appeal, Roberts argues that the trial court's interpretation of the law was in error and the jury's finding that she was entitled to punitive damages, even though it did not award an actual punitive damage amount, is sufficient to grant attorney fees.

{¶ 26} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7, quoting *Nottingdale Homeowners' Assn. Inc. v. Darby*, 33 Ohio St.3d 32, 33 (1987). An exception to this rule exists when punitive damages are awarded in tort cases involving malice. *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432 (12th Dist.), ¶ 17. If punitive damages are proper, reasonable attorney fees may be awarded as an element of compensatory damages. *Galmish v. Cicchini*, 90 Ohio St.3d 22, 35 (2000).

{¶ 27} The Seventh District has considered a plaintiff's entitlement to attorney fees when the jury makes a finding of malice but does not award punitive damages. *Nolan v. Conseco Health Ins. Co.*, 7th Dist. Jefferson Nos. 07 JE 30, 07 JE 31, 2008-Ohio-3332. In *Nolan*, the trial court instructed the jury that even though it had determined the defendant's

actions constituted malice, it could not award attorney fees unless it granted an actual dollar amount of punitive damages. *Id.* at ¶ 198. The Seventh District held that this instruction was not an abuse of discretion because "there has to be an actual award of punitive damages before attorney fees can be awarded." *Id.* at ¶ 206.

{¶ 28} In coming to this conclusion, the court looked to the Fourth District's decision in *Tulloh v. Goodyear Atomic Corp.*, 93 Ohio App.3d 740 (4th Dist.1994). In *Tulloh*, the trial court vacated an attorney fees award when the jury did not award punitive damages but granted attorney fees. *Id.* at 756. The appellate court found that the trial court did not err in vacating the award, stating,

> Most courts hold that the jury must *actually award* punitive damages before an award of attorney fees is proper. In *Digital & Analog Design Corp v. N. Supply Co.*, 62 Ohio St.3d 657 (1992), the court stated:
>
> [T]he requirement that a party pay attorney fees * * * is a punitive (and thus equitable) remedy that flows from a jury finding of malice and the award of punitive damages. * * * Without a finding of malice and the award of punitive damages, plaintiff cannot justify the award of attorney fees, unless there is a basis for sanctions under Civ.R. 11. *See, also*, *Davis v. Tunison*, 168 Ohio St. 471, 477 (1959); *Henry v. Akron*, 27 Ohio App.3d 369, 371 (9th Dist.1985); *Howard v. Urey*, 11th Dist. Trumbull No. 3889, 1988 WL 94379 (Sept. 9, 1988). *But see, Atram v. Star Tool & Die Corp.*, 64 Ohio App.3d 388, 392 (8th Dist.1989), holding that punitive damages need not be actually awarded, i.e., a finding that punitive damages could properly have been awarded is sufficient to support an attorney fees award.[2]

(Emphasis sic.) *Id. See Capretta v. Goodson*, 8th Dist. Cuyahoga No. 76932, 2000 WL 1876404, *5 ( Dec. 18, 2000); *Padgett v. Sanders*, 130 Ohio App.3d 117, 122 (12th

---

2. In subsequent years, the Supreme Court has rejected *Digital's* reasoning that attorney fees are a punitive remedy. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 557 (1994). Instead, "attorney-fee awards and punitive-damages awards are distinct." *Neal-Pettit v. Lahman*, 125 Ohio St.3d 327, 2010-Ohio-1829, ¶ 14-16. While the "award of attorney fees may stem from an award of punitive damages, the attorney-fee award itself is not an element of the punitive-damages award." *Id.* at ¶ 16. Attorney fees are part of compensatory damages. *Id.* at ¶ 14. Though the Supreme Court has rejected *Digital's* reasoning regarding the nature of attorney fees, it has not discounted its statement regarding when a party is entitled to attorney fees in the context of a punitive damages award. Therefore, this does not affect our analysis.

Dist.1998).

{¶ 29} We find *Nolan's* reasoning persuasive and hold that in order to receive attorney fees in the context of a punitive damages award, the jury must find malice and then award an actual dollar amount of punitive damages. Consequently, the trial court correctly interpreted the law regarding the award of attorney fees in the context of a punitive damages award.

## B. Challenges to the Trial Court's Decision in Not Awarding Attorney Fees

{¶ 30} Roberts' second and third arguments concern the trial court's decision to overrule her motion for attorney fees. She argues that the denial to award attorney fees violated her right to a trial by jury provided in Section 5, Article I, of the Ohio Constitution and Civ.R. 49(B).

### i. Ohio Constitution

{¶ 31} Section 5, Article I of the Ohio Constitution provides, "[t]he right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury." Roberts argues that her Ohio constitutional right to a jury trial was violated when the trial court overruled her motion for attorney fees even though the jury determined that attorney fees should be awarded to Roberts. Specifically, Roberts maintains that the jury's decision awarding attorney fees was a factual finding because attorney fees are compensatory damages. Thus, Roberts argues that pursuant to the Ohio Constitution, the trial court had to implement the jury's factual findings and award attorney fees.

{¶ 32} The constitutional right to a trial by jury does not extend to the determination of questions of law. *Kirby v. Barletto*, 10th Dist. Franklin No. 09AP-158, 2009-Ohio-5090, ¶ 25, citing *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 37. *See Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership*, 123 Ohio St.3d 278, 2009-Ohio-5030, ¶

7-8. In *Arbino*, the Supreme Court found that limitations imposed on the amount of damages plaintiffs can recover in tort actions did not violate the right to a jury trial. *Id.* at ¶ 42. The court stated that "the right to trial by jury protects a plaintiff's right to have a jury determine all issues of fact in his or her case." *Id.* at ¶ 34. However, "[t]here is no dispute that the right to a trial by jury does not extend to the determination of questions of law." *Id.* at ¶ 37. Therefore, "so long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body's findings, awards may be altered *as a matter of law*." (Emphasis sic.) *Id.* Consequently, the trial court's application of the law to compensatory noneconomic damages did not violate the right to a jury trial because the court was "simply apply[ing] the limits as a matter of law to the facts found by the jury." *Arbino* at ¶ 27, ¶ 40.

**{¶ 33}** Roberts' right to a jury trial was not violated because the trial court's decision to deny attorney fees turned on an issue of law; whether the law permitted a party to recover attorney fees when a dollar amount of punitive damages had not been awarded. Moreover, we disagree with Roberts' characterization of the trial court's denial of attorney fees as interfering with the jury's factual findings. Similar to *Arbino*, the trial court was applying the law to the jury's verdict. The type of damages to which the law is applied, in this case compensatory damages, does not change the nature of the court's decision. Consequently, the trial court did not violate Robert's Ohio Constitutional rights when it denied her motion for attorney fees.

### ii. Civ.R. 49(B)

**{¶ 34}** After the jury rendered its verdict awarding Roberts attorney fees but not punitive damages, neither Roberts nor Culbertson objected to the award. The jury was then discharged. Later, Roberts filed a motion for attorney fees explaining her view of the law regarding her entitlement to attorney fees when punitive damages have not been awarded

and requesting and explaining the reasonableness of attorney fees. In response, Culbertson filed a motion for judgment notwithstanding the verdict, arguing that Roberts was not entitled to attorney fees because a jury must award a sum of punitive damages before attorney fees are granted. Therefore, Culbertson requested the court to deny Roberts' motion for attorney fees. Ultimately, the trial court agreed with Culbertson and denied Roberts' motion for attorney fees.

{¶ 35} On appeal, Roberts argues Culbertson's motion for judgment notwithstanding the verdict was essentially a Civ.R. 49(B) motion because his rationale hinged on the premise that the verdict inconsistently found that punitive damages should be awarded but granted zero dollars. Roberts maintains that Culbertson waived his right to make this argument because he did not raise the issue before the jury was discharged. Additionally, Roberts argues that because Culbertson's challenge was essentially a Civ.R. 49(B) motion, the trial court was constrained by Civ.R. 49(B) in its actions. Therefore, Roberts contends the trial court violated Civ.R. 49(B) when it denied attorney fees instead of either re-instructing the jury regarding the award of attorney fees or ordering a new trial as permitted by Civ.R. 49(B).

{¶ 36} Civ.R. 49(B) provides, "[w]hen one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and the verdict or may order a new trial." Civ.R. 49(B) is instructive when a party alleges that a verdict is internally inconsistent. *Lazzaro v. Picardini*, 11th Dist. Lake Nos. 91-L-023, 91-L-024, 1992 WL 25283 (Jan. 24, 1992). *See Arrow Machine Co., Ltd. v. Array Connector Corp.*, 197 Ohio App.3d 598, 2011-Ohio-6513 (11th Dist.), ¶ 53.

{¶ 37} In this case, the alleged inconsistency occurred within the general verdict.

Roberts argues that Culbertson waived his ability to challenge the attorney fee award because he did not raise his argument that attorney fees could not be awarded as a matter of law before the jury was discharged. In general, "[i]nherent inconsistencies between different general verdicts rendered by a jury must be raised by a party before the jury is discharged. If not so raised, such arguments are thereafter waived." *Alliance Excavating, Inc. v. Triangle Real Estate Servs., Inc.*, 10th Dist. Franklin No. 08AP-535, 2009-Ohio-2761, ¶ 10.

{¶ 38} However, we find that Roberts is the party who did not timely raise the issue of the attorney fee award to the trial court. The Eighth District has found that no error occurred in vacating a jury's attorney fee award when the plaintiff's actions "directly contributed to the errors of which they now complain." *Capretta*, 8th Dist. Cuyahoga No. 76932, 2000 WL 1876404, *5 (Dec. 18, 2000). In *Capretta*, the trial court vacated the jury's attorney fees award because punitive damages were not granted. *Id.* On appeal, the plaintiff argued that the trial court erred in vacating the attorney fee award, the verdict was inconsistent, and pursuant to Civ.R. 49(B) the court should have reinstructed the jury regarding attorney fees. *Id.* at *4. The appellate court affirmed the trial court's decision in vacating attorney fees, reasoning that the plaintiff did not object to the jury instructions which allowed the result and did not submit interrogatories to test the jury's verdict. *Id.* at *6. Therefore, due to plaintiff's failure to present the issue to the court in a timely matter, the trial court did not err in denying the request to "re-instruct the jury" and vacate the attorney fee award. *Id.* at *7.

{¶ 39} In the case sub judice, the trial court instructed the jury,

> If you decide that either [Culbertson or Mike's Trucking or both] is liable in punitive damages, you must also decide whether either [Culbertson or Mike's Trucking or both] is liable for attorney fees of counsel employed by Plaintiff in the prosecution of this claim. There is no standard that is within your discretion based on proof. If you decide that either [Culbertson or Mike's Trucking or both] is liable for attorney fees, the Court will determine the amount.

**{¶ 40}** Additionally, the verdicts returned from the jury stated,

> We the jury, being duly impaneled and sworn, on the issue of punitive damages find for  _Roberts_ .
>
> Having found for Teresa Roberts, we find that Teresa Roberts shall recover from the said Mike Culbertson punitive damages in the amount of $__0_____.
>
> We find that attorney fees (<u>should</u>) be awarded.[3]

**{¶ 41}** Roberts failed to raise any challenges before the trial court pertaining to the jury instruction or the verdict. Specifically, Roberts did not object to the jury instructions nor did she indicate that the instructions were not clear regarding the award of attorney fees and punitive damages. Additionally, while the jury verdict form permitted the jury to find "for" Roberts on punitive damages, award zero dollars, and then award attorney fees, Roberts never objected to the form. After the jury rendered its decision, Roberts did not object nor request to submit interrogatories to the jury to clarify its award. Instead, the first time the trial court became aware that the law might prohibit an award of attorney fees without a dollar amount of punitive damages was in Roberts' motion for attorney fees. Roberts continued to assert her misunderstanding that the law permitted an award of attorney fees even without a dollar amount award of punitive damages. In response, Culbertson moved for judgment notwithstanding the verdict which set forth his position. Thereafter, the trial court considered the pertinent law and denied Roberts' motion for fees reasoning that the law did not permit the award.

**{¶ 42}** In light of Roberts' multiple failures to present this issue to the trial court, we find that the court's action in denying attorney fees was not in error and did not violate Civ.R. 49(B). The first time the trial court became aware of the law regarding the award of attorney fees and punitive damages was in Roberts' motion for attorney fees. Roberts contributed to

---

3. The underlined portions of the verdict were the portions supplied by the jury.

the error and should have made the trial court aware of the issue earlier by objecting to the jury instructions and submitting interrogatories to the jury. Instead, Roberts waited until after the jury was discharged to present her argument regarding the entitlement to attorney fees without an award of punitive damages. Roberts cannot now argue on appeal that the trial court did not have authority to deny attorney fees when the court was not presented with the arguments in a timely manner. Consequently, the trial court's actions in denying Roberts motion for attorney fees were not in error.

{¶ 43} Thus, the trial court did not err in its interpretation of the law regarding a party's entitlement to attorney fees when a dollar amount of punitive damages has not been awarded. Moreover, the trial court did not infringe upon Roberts' constitutional right to a jury trial or violate Civ.R. 49(B) when it denied Robert's motion for attorney fees. Roberts' first, fourth, fifth, and six assignments of error are overruled.

## II. Federal Claim

{¶ 44} Roberts next challenges the trial court's refusal to award attorney fees under her federal claim against Mike's Trucking. Specifically, she argues that error occurred when the court concluded that attorney fees were improper because Roberts received nominal damages under the federal claim. First, Roberts disputes the characterization of the federal award as nominal. Second, she maintains that even if the federal damages were nominal, the trial court should look to the damages awarded under the state claim for purposes of determining her entitlement to federal attorney fees. Third, Roberts argues that the federal attorney fee award need not be proportionate to her federal damages.

{¶ 45} We review de novo the trial court's legal analysis underpinning the award of attorney's fees, but otherwise review the fee award for an abuse of discretion. *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1228 (10th Cir.2001); *Coey v. Dave Gill Pontiac-GMC, Inc.*, 10th Dist. Franklin No. 04AP-432, 2005-Ohio-464. In a de novo review, this court

- 12 -

independently reviews the record without giving deference to the trial court's decision. *Kormos*, 12th Dist. Clermont No. CA2011-08-059, 2012-Ohio-3128 at ¶ 13.

{¶ 46} Roberts brought a federal cause of action against Mike's Trucking alleging that it discriminated against her with respect to her employment because of her sex in violation of Title VII the Civil Rights Act of 1964, 42 U.S.C. 2000e-2. That statute provides that a court in its discretion may award "reasonable" attorney's fees to the "prevailing party" in a Section 2000 action. 42 U.S.C. 2000e-2(k). A plaintiff who wins only nominal damages is a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 111-112, 113 S.Ct. 566 (1992). *See Virostek v. Liberty Township Police Dept./Trustees*, 14 Fed.Appx.493, 510 (6th Cir.2001).

{¶ 47} After a court determines that a plaintiff is a prevailing party, it must then determine what is a "reasonable" attorney fee. Although the fact that a plaintiff was awarded only nominal damages does not affect the prevailing party inquiry, "it does bear on the propriety of fees awarded." *Id.* at 114. In determining the reasonableness of a fee award "the most critical factor * * * is the degree of success obtained." *Citizens Against Tax Waste v. Westerville City School*, 985 F.2d 255, 258 (6th Cir.1993), quoting *Farrar* at 114.[4] "When a plaintiff recovers only nominal damages because of [her] failure to prove an essential element of [her] claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.*

{¶ 48} In this case, Roberts received two favorable judgments from the jury; $42,000 against Culbertson, individually, under the Ohio cause of action and $100 against Mike's

---

4. Roberts argues that this court should look to Justice O'Connor's concurring opinion in *Farrar* for additional considerations on the degree of success inquiry. In *Farrar*, O'Connor joined the majority without reservation but then filed a concurring opinion which suggested that courts should look to other factors including "the significance of the legal issue" decided, and whether the decision "accomplished some public goal." *Farrar* at 121-122. Some circuits have looked to these factors in determining whether to award attorney fees in a nominal damages case. *Barber*, 254 F.3d 1223, 1230-1232; *Jama v. Esmore Correctional Services, Inc.,* 577 F.3d 169, 174-177 (3rd Cir.2009). However, O'Connor's opinion is not the controlling authority in *Farrar*. *See Jama* at 187(Garth, dissenting). Moreover, the Sixth Circuit has not mentioned the "O'Connor factors" when discussing whether to grant attorney fees once nominal damages are awarded. *Virostek*, 14 Fed.Appx.493. Therefore, we will not address these factors.

Trucking, under both Ohio and federal law. Thereafter, Roberts requested attorney fees under the federal cause of action against Mike's Trucking pursuant to 42 U.S.C. 2000. The trial court denied Roberts' requests for fees reasoning that the award against Mike's Trucking was nominal and therefore under *Farrar*, she was not entitled to fees.

**{¶ 49}** Roberts first takes issue with the trial court's characterization of the $100 award as nominal. Roberts' points to a 1956 Ohio Supreme Court decision that stated that "awards in the $100 to $200 range are considered too substantial to qualify as 'nominal' damages." *Lacey v. Laird*, 166 Ohio St.12, 21 (1956). However, we find *Lacey* clearly distinguishable as the value of the dollar has significantly changed since 1956. Since *Lacey*, several courts have recognized that given the worth of today's dollar, $100 is properly classified as nominal damages. *Williams v. Kaufman County*, 352 F.3d 994, 1014 (5th Cir.2003). *See Gevedon v. Gevedon*, 167 Ohio App.3d 1, 2006-Ohio-2668 (2d Dist.), ¶ 25, 29; *Anchor v. O'Toole*, 94 F.3d 1014, 1020 (6th Cir.1996).[5] Therefore, the characterization of the $100 as a nominal amount was proper.

**{¶ 50}** Roberts' next contends that even if this court finds the $100 a nominal amount, her success on the Ohio claim against Culbertson can support an award of attorney fees under the federal action against Mike's Trucking. Roberts argues that this court can impute her success against Culbertson individually to the federal claim against Mike's Trucking. Therefore, Roberts received substantial damages and she is entitled to attorney fees.

**{¶ 51}** A plaintiff who receives a favorable judgment and no damages for a federal action but received substantial damages under a state claim may be eligible to receive attorney fees under the federal action when the claims involve related legal theories. *Bridges*

---

5. Additionally, we do not agree with Roberts' argument that this court has recently found that awards of $100 were not nominal damages. *Woehler v. Brandenburg*, 12th Dist. Clermont No. CA2011-12-082, 2012-Ohio-5355, ¶ 35. Instead, this court used the Supreme Court's *Lacey's* decision to support its finding that $5,000 was not a nominal sum.

*v. Eastman Kodak Co.*, 102 F.3d 56 (2d Cir.1996); *Jama v. Esmore Correctional Services, Inc.*, 577 F.3d 169 (3d Cir.2009). A plaintiff's success on the state claim is sufficient to make the plaintiff "a 'prevailing party' eligible for attorney fees and costs under § 2000e-5(k)." *Bridges* at 59. Nonetheless, the federal and state claims must be related or a "common nucleus of operative facts." *Jama* at 179-180. *See Knutty v. Wallace*, 100 Ohio App.3d 555, 559 (10th Dist.1995); *Cincinnati ex rel. Kuntz v. Cincinnati*, 79 Ohio App.3d 86, 94 (1st Dist.1992); *CSAHA/UHHS-Canton, Inc. v. Aultman Health Found*, 5th Dist. Stark No. 2010CA00303, 2012-Ohio-897, ¶ 134.

{¶ 52} However, a plaintiff cannot receive attorney fees through a federal statute due to her success on a state law claim when the state and federal claims are against different defendants. *Johnson v. City of Aiken*, 278 F.3d 333 (4th Cir.2002). In *Johnson*, the court found that a plaintiff could not recover attorney fees through the federal statute when she was awarded $50,000 under state law against a city and nominal damages under federal law against individuals. *Id.* In so holding, the court looked to a U.S. Supreme Court decision which found that a plaintiff could not receive attorney fees from a city based on its success against individuals when that city was not "legally responsible for relief on the merits." *Id.* at 338, citing *Kentucky v. Graham*, 473 U.S. 159, 164, 105 S.Ct. 3099 (1985). "[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against * * * § 1988 does not authorize a fee award against that defendant." *Graham* at 165. *See Heeren v. City of Jamestown, Ky.*, 39 F.3d 628 (6th Cir.1994); *In re Crescent City Estates, LLC*, 588 F.3d 822, 827 (4th Cir.2009).

{¶ 53} Thus, Roberts' success against Culbertson under the state claim cannot be used to justify a federal attorney fees award against Mike's Trucking because Mike's Trucking was not the party liable on the merits under Roberts' successful state claim. Additionally, we disagree with Roberts' assertion that her success against Culbertson should be imputed to

Mike's Trucking because Mike's Trucking was Culbertson's "alter ego." Whether or not this finding would allow us to grant attorney fees, Roberts failed to present evidence regarding this matter or make this argument at any other time during the course of the litigation. Therefore, we will not address this assertion.

{¶ 54} Consequently, Roberts is not entitled to attorney fees pursuant to 42 U.S.C. 2000. The jury award against Mike's Trucking was a nominal amount and the trial court did not err in finding it did not justify an award for attorney fees. While Roberts was successful in her state claim against Culbertson individually, this result cannot be used to justify an award of attorney fees against Mike's Trucking because the actions involved two different defendants. Lastly, because the trial court did not err in denying attorney fees, we do not need to discuss Roberts' argument regarding the proportionality of those fees. Therefore, the trial court did not err in denying attorney fees under the federal statutory action.

{¶ 55} Roberts' second and third assignments of error are overruled.

### III. Manifest Weight of the Evidence

{¶ 56} In their cross-assignment of error, Culbertson and Mike's Trucking claim that the jury's finding that they created a hostile workplace due to sexual harassment was against the manifest weight of the evidence. Specifically, they argue that Roberts did not establish that Culbertson's conduct was severe or pervasive enough to affect her employment.

{¶ 57} When evaluating whether a judgment is against the manifest weight of the evidence in a civil case, the standard of review is the same as in the criminal context. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. We weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Marinich v. Lumpkin*, 12th Dist. Warren No. CA2011-11-124, 2012-Ohio-4526, ¶ 20, quoting

*Eastley* at ¶ 20. In weighing the evidence, we are mindful of the presumption in favor of the finder of fact. *Eastley* at ¶ 21. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984).

**{¶ 58}** Roberts has alleged sexual discrimination and harassment in violation of Ohio law, R.C. 4112.02, as well as sexual discrimination and harassment in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2. Title VII and R.C. 4112.02 claims are subject to the same standards. "Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising under R.C. Chapter 4112 to the extent that the terms of the statutes are consistent." *Colston v. Cleveland Pub. Library*, 522 Fed.Appx. 332, 336 (6th Cir.2013), quoting *Birch v. Cuyahoga Cty. Probate Ct.*, 173 Ohio App.3d 696, 2007-Ohio-6189, ¶ 20 (8th Dist.). The "prima-facie case requirements are essentially the same under Ohio Revised Code § 4112.02 * * * [so the] federal and state-law claims of gender discrimination may be disposed of together." *Colston* at 336, quoting *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir.2004).

**{¶ 59}** "A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 176 (2000), citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399 (1986). To do so, the plaintiff must show that "the harassing behavior was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir.2009).

**{¶ 60}** The U.S. Supreme Court has explained,

Conduct that is not severe or pervasive enough to create an

- 17 -

> objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Gallagher* at 273, quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367 (1993). Therefore, the focus of this inquiry is: "1.) whether a reasonable person would find the environment objectively hostile; and 2.) whether the plaintiff subjectively found the conduct severe or pervasive." *Gallagher* at 273.

{¶ 61} Conduct need not be both severe *and* pervasive to constitute a hostile environment, but may be either sufficiently severe or sufficiently pervasive. *Williams v. CSX Transp. Co., Inc.*, 6th Cir. No. 12-6197, 2013 WL 5288977 (Sept. 19, 2013), *4. In assessing whether the alleged sexual harassment is severe or pervasive, courts consider the conduct's frequency, the conduct's severity, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the victim's work performance. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d. 321, 333 (6th Cir.2008), citing *Harris* at 22.

{¶ 62} To determine whether a work environment is "hostile" or "abusive" courts look at the totality of the circumstances. *Gallagher* at 273. "[E]ven where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." *Id.* "Along these same lines, it is generally understood that the 'severe or pervasive' requirement does not present two mutually exclusive evidentiary choices, but reflects a unitary concept where deficiencies in the strength of one factor may be made up by the strength in the other." *Hampel* at 181.

{¶ 63} At trial, several former employees of Mike's Trucking testified regarding their experience with Culbertson during 2005 to early 2010, the period of time that Roberts was

employed at Mike's Trucking. Dawn Peters stated that she began to work for Mike's Trucking in 2006. Peters explained that she and Roberts worked in the office along with Culbertson and another male dispatcher while most of the other employees worked outside the office, driving and working on the trucks. Peters frequently overheard Culbertson joke about Roberts sitting on his lap and needing help in the restroom. She stated that Culbertson called Roberts his "sexretary" numerous times and often discussed his sex life in the workplace. Charles Feltner, a former truck driver, also testified that he frequently observed Culbertson engage in inappropriate sexual behavior with Roberts and other female employees. Feltner stated that Culbertson touched another female employee's breast two or three times, another office in the complex had several magazines containing pictures of naked women, and a stripper was invited to an office party.

{¶ 64} John Mercer, a former mechanic who worked at Mike's Trucking in 2005 and 2006, testified that Culbertson made inappropriate sexual remarks in the office on a "daily, weekly" basis. These remarks included asking the women: "Do you want to come sit on Big Daddy's lap?" When Roberts and other women went into the restroom he asked: "Can I pull your pants down for you?" and "Can I wipe that for you?" In response, Roberts got very angry with Culbertson. Culbertson also squeezed a female employee's breast and stated: "Mamma's got a squeeze box." Additionally, Culbertson tapped Roberts on the butt once and frequently made remarks about Roberts' appearance.

{¶ 65} Suzanne Harrington, a secretary for Mike's Trucking in 2005 and 2006, testified that she worked in the office along with Roberts. She stated that Culbertson had grabbed her breasts and frequently tried to corner her when she came out of the bathroom to touch her and kiss her. Additionally, Culbertson would come into the office in the morning and talk about his sex life two to four times a week. Culbertson referred to himself as "Big Daddy" and told the women to "come to Big Daddy" and asked "want to sit on Big Daddy's lap?"

When the women went to the restroom, Culbertson asked them if they needed any help or "do you want me to hold it?"

{¶ 66} Next, Roberts testified regarding the sexual harassment she endured from Culbertson. Roberts explained that she worked at Mike's Trucking from 2005 to 2010 and that the sexual harassment got progressively worse throughout the years. She stated that in late 2006 and 2007, Culbertson was in the office more often and would ask Roberts if she needed help in the restroom or asked her to sit on "Big Daddy's" lap at least twice a week. In late 2007, Roberts stated that Culbertson got more aggressive and came behind her desk, gave her massages, held his crotch and told her that he knew she wanted "Big Daddy." These comments occurred "at least 20 or more" times and she frequently told him to "stop" but that he did not listen. She stated that during this time the comments got so bad she did not want to go to work anymore and that she felt that her productivity was going downhill because "I had to constantly be aware of where he was at and what he was doing."

{¶ 67} By 2008, working for Culbertson became "horrible." Culbertson frequently talked about his sex life and made comments about the bathroom nearly every day causing Roberts to attempt to urinate as little as possible during the day. She stated that one morning Culbertson came into the office discussing his sex life with his wife and oral sex. Roberts testified, "He said that his wife wouldn't perform them on him. And he said to me, 'Do you swallow?' And started laughing about it. I mean, he was—he was hitting his hands on the counter like that saying, 'you do, you do, don't you, you do, you do, you do, don't you?" Roberts also stated that Culbertson frequently touched her and that he was "always trying to touch me and hug me and kiss me and you know, touch his penis against me. He always tr[ied] to make contact with my vagina with his penis." In response, she would push him off her and tell him he was "disgusting."

{¶ 68} Roberts testified that in 2009 the work environment became worse. She stated

that Culbertson talked about sex in general hundreds of times and oral sex at least five times during the year. Culbertson told Roberts that he "masturbate[s] thinking of [Roberts] in the shower" and asked her if she would "crawl under his desk." Additionally, Culbertson often trapped her at the warehouse door, telling her to "Give Big Daddy some loving" or "Give Big Daddy some hugs or Give Big Daddy some kisses" at least twice a week. Roberts explained that because of Culbertson's behavior she experienced anxiety attacks and high blood pressure and was prescribed anti-anxiety medication. She stated that Culbertson has made her an insecure person and that "he has taken a lot out of me."

{¶ 69} Roberts' fiancé also testified at trial and explained that he had been with Roberts during her employment at Mike's Trucking. He explained that before Mike's Trucking, Roberts was a very confident, aggressive, and hardworking person. However, while at Mike's Trucking she was often frustrated with work and did not want to go to work. Eventually, Roberts began having anxiety attacks and once she was escorted by ambulance to the hospital. He stated that after her employment with Culbertson, Roberts is much more insecure and always feels like someone is following her.

{¶ 70} In his defense, Culbertson presented several witnesses who testified that he did not sexually harass any female employees at Mike's Trucking. Denise Kingsley, a former employee of Mike's Trucking, denied that Culbertson made inappropriate sexual remarks at work, groped women, asked if they needed help in the bathroom, or talked about his sex life on a frequent basis. She stated that Roberts has pressured her into lying that Culbertson had sexually harassed her and forced her to make an Equal Employment Opportunities Commission complaint against Culbertson for the behavior. Additionally, a current employee of Mike's Trucking, Ron Greene, stated that Culbertson did not make any inappropriate sexual remarks to any of the women employees at Mike's Trucking. He stated that while Culbertson made some remarks about his sex life it was normal "guy stuff" and he denied

that any pictures of naked women were in the facility.

{¶ 71} Lastly, Culbertson testified that he never engaged in any inappropriate behavior towards Roberts or other female employees at Mike's Trucking. Instead, Culbertson suggested that Roberts initiated this lawsuit because she was angry about a disagreement over the management of the company and a reduction in benefits. Culbertson explained that during the end of 2009 the company was suffering financial difficulties. Roberts became irritated when Culbertson decided to cut benefits and holiday pay from all hourly employees. He stated that she was angry all the time and treated the other employees poorly. Ultimately, Roberts quit after she and Culbertson got into a disagreement when Roberts paid the truck drivers holiday pay without Culbertson's permission.

{¶ 72} On cross-examination, Culbertson admitted that he might have incidentally mentioned his sex life at work but denied ever having a "straight discussion about sex in our place." Culbertson denied groping any female employees, having any inappropriate discussions about sex, or asking female employees to sit on "Big Daddy's" lap. He acknowledged that a few "Playboys" could have been in the mechanic's office and that the office might have had a calendar with nude women on it but insisted that neither Roberts nor any other female employee complained about these items.

{¶ 73} In light of the forgoing, the jury's finding that Culbertson's harassing behavior was sufficiently severe or pervasive to affect Roberts' employment was not against the manifest weight of the evidence. Roberts' testimony was consistent with several witnesses affirming that Culbertson frequently engaged in a variety of conduct ranging from inappropriate discussions to groping women. The witnesses stated that Culbertson often discussed his sex life, asked Roberts and the women employees if they needed help in the bathroom or if they could help him in the bathroom, referred to himself as "Big Daddy," asked Roberts and the women employees to sit in "Big Daddy's" lap, and asked them if they would

give "Big Daddy" a hug.  Many of the employees, including Culbertson, also stated that pictures of naked women were on a calendar in the office and that the mechanic's shop had several "Playboy" magazines.

{¶ 74} The evidence established that the conduct occurred frequently.  Roberts testified that throughout her employment, Culbertson's behavior became increasingly worse and that in 2009 he talked about sex hundreds of times, and attempted to corner her and hug and kiss her at least twice a week.  Mercer and Harrington testified that Culbertson talked about sex and asked the women if they needed help with the bathroom multiple times a week.  The evidence also showed that the conduct became increasingly severe as Culbertson massaged Roberts, rubbed up against her, and attempted to rub his penis next to her vagina.  Roberts testified that Culbertson's conduct was humiliating towards her as his remarks were in front of others and she often became "furious" with him.  Other employees reported Roberts becoming angry towards Culbertson.  Roberts also established that Culbertson's conduct unreasonably interfered with her work performance as she stated she did not want to go to work anymore, she became less productive, and she suffered anxiety attacks.  Her fiancé testified that Roberts has lost confidence and that she is now prescribed anti-anxiety medication.

{¶ 75} Consequently, there was sufficient and substantial evidence to support the jury's finding that a reasonable person would find Culbertson's conduct created a hostile environment and Roberts found the conduct to be sufficiently severe or pervasive to affect her employment.  While Culbertson and other witnesses testified that Culbertson did not engage in any sexual inappropriate behavior, this court should not reverse a jury's decision simply due to contrary evidence.  The jury in this case was in a better position to view the witnesses, observe their demeanor, and assess their credibility, and was free to believe or disbelieve all, part, or none of their testimony.  *See State v. Cruz*, 12th Dist. Butler No.

CA2012-03-059, 2013-Ohio-215, ¶ 54. Here, the jury obviously found Roberts' testimony to be more credible and chose to believe her version of the events rather than Culbertson's proffered version. After reviewing the entire record, weighing the inferences and examining the credibility of the witnesses, we cannot say the jury clearly lost its way so as to create a manifest miscarriage of justice requiring the verdict to be reversed.

{¶ 76} Culbertson and Mike's Trucking's cross-assignment of error is overruled.

{¶ 77} Judgment affirmed.


S. POWELL and RINGLAND, JJ., concur.